THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARIO DUPLESSIS, Defendant-Appellant.

First District (3rd Division)   No. 1—92—2083

Opinion filed June 30, 1993.

Rita A. Fry, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Martin P. Head, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

On December 29, 1989, defendant, Mario Duplessis, pleaded guilty to the criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(3)) of his daughter and was sentenced to 48 months' probation. Five months later, the State filed a petition for violation of defendant's probation based on allegations that defendant sexually abused two daughters on January 12, 1990, and April 12, 1990. After a hearing, defendant was found in violation of his probation. The probation was revoked and a term of 10 years' imprisonment was imposed.

On appeal, defendant asserts that (1) the State did not properly prove the allegations of the probation revocation; (2) the trial court improperly sentenced him for the crimes involved in the violation of probation rather than on the original crime; (3) the trial court erred in admitting hearsay; and (4) the trial court erred in excluding certain people from the hearing. We affirm.

At trial, V.D., who is defendant's daughter, testified that she was 14 years old in April 1990. At that time, she was living in her father's Hickory Hills apartment with her mother, three older sisters, younger brother, and younger sister. Defendant was not living in the apartment at that time.

V.D. stated that she had stayed home sick from school sometime between April 12, 1990, and April 15, 1990. About 8:30 a.m. on that day, V.D. was in the front room and her older sister, Annette, was getting ready for school. No one else was at home. Unexpectedly, defendant came into the apartment using his own key. After speaking to V.D., defendant went to Annette's bedroom and asked her if she intended to go to school. Annette responded that she was leaving shortly. Soon after, Annette left for school, leaving defendant and V.D. alone in the front room.

According to V.D., she was watching television when her father sat on the couch next to her. V.D. moved away from him, but he moved closer, picked up V.D.'s bra, and touched her breast. Defendant continued to fondle V.D.'s breasts and said that he wanted to have a

child with her. V.D. stated that she just sat there, not knowing what to do.

Defendant then put his hand down V.D.'s pants and touched her vagina, eventually putting his finger inside her vagina and rubbing. V.D. did not remember if defendant said anything during those few minutes.

V.D. further testified that defendant removed his penis from his pants and told her to perform oral sex on him. When she refused, defendant began to masturbate. Then, he lay on top of her and attempted to have intercourse. His penis touched her vagina, but there was no penetration. V.D. told defendant that he was crazy because he was on probation for her younger sister. According to V.D., defendant replied that he had gotten away with that.

V.D. stated that she ran away and went to a nearby gas station where she remained until later that day. Before V.D. ran out of the apartment, defendant told her that he would hurt her sisters and kill her if she told anyone.

V.D. acknowledged that she did not tell anyone about the incident until 12:30 a.m. on May 7, 1990, when she told her mother and two older sisters, Annette and Ms. D (whose initials are also V.D.). V.D. stated that she did not say anything right away because of her father's threats, which she believed since she had previously seen her father hit her sisters.

Annette Duplessis, 22 years old, testified regarding the day between April 12, 1990, and April 15, 1990, when her father came into their apartment and asked her if she were going to school. Annette stated that she told him that she was late. When she left for school, V.D. and defendant were alone in the apartment.

Annette also testified that in May 1990, V.D. told her, her mother, and her sister about the incident. Over defense counsel's hearsay objection, Annette testified that V.D. told her that their "father had been molesting her, that he was doing that stuff to her, touching her, and you know."

Ms. D., 20 years old, testified that on May 7, 1990, she was with V.D., Annette, and her mother in their Hickory Hills apartment. Over defendant's objection, Ms. D. related the conversation during which V.D. said that their father "had been repeatedly molesting her." Upon hearing V.D.'s disclosure, Ms. D. told her mother and two sisters that defendant had also molested her once in January.

Ms. D. testified that her father was living with the family in January 1990, which was less than one month after he was placed on probation. She was 18 years old at the time. One day in early January

1990, Ms. D. was home alone with defendant. She was sleeping on the couch in the front room. When she awoke, defendant was over her with his hand in her pants, touching her vagina. Defendant immediately took his hand out and ran away. When he returned a few minutes later, he was crying and said that it would never happen again.

Ms. D. stated that she did not tell anyone about the incident until May 7, 1990, because the family had just gone through one ordeal involving defendant. Since defendant had said that it would not happen again, she felt that the incident did not warrant calling the police. She became concerned, however, when she heard about the incident with V.D.

Defendant testified that he lived with his two oldest daughters in the Hickory Hills apartment in January 1990 while his ex-wife and other children lived in Chicago. According to defendant, his ex-wife called him in early January 1990 to tell him that someone had broken into her apartment and molested V.D. while she was home alone. Defendant's ex-wife also asked if their daughter, Laura, could live with him because she wanted to go to her old school. Defendant agreed and Laura soon after moved in with defendant.

Defendant stated that his ex-wife and children arrived at his apartment and informed him that they were moving in because V.D. was afraid that the man who molested her would return. Defendant and his ex-wife argued about the move, but his ex-wife threatened to place him in jail with one phone call if he did not do what she said. When defendant's ex-wife refused to move out, defendant left and stayed with a friend.

Defendant admitted that he went to his apartment one morning around 9:30 or 9:40 a.m. in April 1990 to pick up his mail. He did not expect anyone at home since he assumed the children were at school and his ex-wife was at work. When he entered the apartment, defendant saw his daughters, Laura and V.D., in the front room. Defendant stated that he became upset because they should have been in school. Defendant told his daughters to clean up the house, but they ignored him. After about five minutes, defendant asked Laura to vacuum the carpets and left.

In addition, defendant denied that he had molested Ms. D. in January 1990. He stated that his daughters told the stories because his ex-wife made them tell the stories for revenge.

Upon reviewing the evidence, the trial court found defendant in violation of his probation by a preponderance of the evidence. At the subsequent sentencing hearing, the trial court sentenced defendant to 10 years' imprisonment.

■■ On appeal, defendant asserts that the trial court erred in revoking his probation because the complainants' delay in reporting his misconduct precludes a finding of a violation of probation by a preponderance of the evidence. To support his argument that a victim's testimony is insufficient if there is no immediate outcry, defendant relies on *People v. Karmenzind* (1991), 220 Ill. App. 3d 167, 580 N.E.2d 909, which is inapplicable. The *Karmenzind* court ruled that the defendant was not guilty of criminal sexual assault of his son because the son, who was between two and four years old at the time of the alleged assault, gave conflicting testimony, did not report the incident until one to three years later, and was unable to identify his father in court. (*Karmenzind*, 220 Ill. App. 3d at 169-75.) In addition, the court found that his testimony was uncorroborated except for various accounts of his story to other people and the medical tests had established that there was no injury or scarring in the victim's rectal area. *Karmenzind*, 220 Ill. App. 3d at 175-76.

In response, the State asserts that it proved that defendant violated his probation because the two victims' detailed testimony was clear and defendant admitted that he had been in the apartment on that day. Furthermore, the State contends that it was reasonable for V.D. not to report the molestation until three weeks after the incident because she believed defendant's threats. Defendant still had a key to the apartment and V.D. had previously seen him hit her sisters. In addition, the State maintains that Ms. D.'s four-month delay in complaining about the molestation was reasonable because the family had recently gone through legal proceedings where defendant pleaded guilty to molesting Ms. D.'s youngest sister and defendant came back to Ms. D. crying, saying that it would never happen again.

To support its argument that any delay in making a complaint goes to the weight of the evidence and to the credibility of the witness, the State relies on *People v. Foley* (1990), 206 Ill. App. 3d 709, 565 N.E.2d 39. In *Foley*, the court held that a complainant's testimony cannot be rejected merely because she did not tell anyone about the sexual abuse for 10 or 11 months. *Foley*, 206 Ill. App. 3d at 716.

Although a failure to speak when it is natural to do so under the circumstances discredits the credibility of the claimant and may amount in effect to an assertion of the nonexistence of that fact (*People v. King* (1973), 10 Ill. App. 3d 652, 655, 295 N.E.2d 258), a delay in reporting incidents of sexual abuse may be reasonable where the victim's silence can be attributed to fear of the offender or to shame, guilt, and embarrassment. (*Foley*, 206 Ill. App. 3d at 716.) In sexual assault cases involving family relationships, the victim's credibility is

not lessened if there is no immediate outcry. Furthermore, determinations of credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43, 535 N.E.2d 889.) Where the findings of fact must be determined from the credibility of the witnesses, a reviewing court will defer to those findings unless they are against the manifest weight of the evidence. *People v. Whitfield* (1986), 147 Ill. App. 3d 675, 679, 498 N.E.2d 262.

The State then urges this court to apply the sufficiency of the evidence test that was applied in *People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 690, to violation of probation hearings. Prior to *Schott*, the standard of review for a sex crime victim's testimony was that it was insufficient to sustain a conviction if the testimony was not clear and convincing or substantially corroborated. (*Schott*, 145 Ill. 2d at 202.) The Illinois Supreme Court in *Schott*, however, adopted the reasonable doubt test articulated in *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267. Thus, the State contends that the test to be used to review a violation of probation hearing should be whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential element of the crime by a preponderance of the evidence. We disagree.

Currently, the State must prove a violation of probation by a preponderance of the evidence. (*People v. Cooper* (1977), 66 Ill. 2d 509, 514, 363 N.E.2d 817.) To reverse a trial court's ruling of a violation of probation, the reviewing court must find that the ruling was against the manifest weight of the evidence. (*People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721; *People v. Leigh* (1976), 45 Ill. App. 3d 563, 565, 359 N.E.2d 1059.) Since this standard does not contradict the *Schott* ruling, there is no reason to change the standard of review for violation of probation rulings.

In light of the evidence presented and the applicable principles of review, we find that the trial court's ruling was not against the manifest weight of the evidence. Thus, we affirm the trial court's finding that defendant violated his probation by a preponderance of the evidence.

Next, defendant asserts that the trial court improperly sentenced him. Defendant maintains that the judge, who was not the same judge who accepted his original guilty plea and sentenced him to probation, based the sentence on the crimes used in the violation of probation instead of the crime for which he had originally been convicted.

Although the sentence imposed following a revocation of probation must be for the original offense, the trial court may take into account the defendant's conduct during probation to assess his rehabilitation potential. (*People v. Young* (1985), 138 Ill. App. 3d 130, 134-35, 485 N.E.2d 443.) The record should show that the trial court (1) considered the evidence received during the original trial; (2) considered any presentence reports; (3) considered evidence and information in aggravation and mitigation; (4) heard arguments regarding sentencing alternatives; and (5) afforded the defendant the opportunity to speak in his own behalf. *People v. Gaurige* (1988), 168 Ill. App. 3d 855, 869, 522 N.E.2d 1306.

▪▪ The record indicates that the trial court was adequately apprised of the facts of the first crime. The trial court also clearly stated three times that it was sentencing defendant for the original crime, not the two charges that were the subject of the violation of probation hearing. The trial court stated:

"Well, the sentencing in this case rises independently of the other two cases.

\* \* \*

I have considered the VOP allegations here and made findings on them. The fact of the matter is that the Defendant has also had an investigative report done in which I have considered. Further as an indication here there was a 402 Conference held pursuant to the other two cases that were involved in this case, but they are separate and distinct from the finding of guilty on the sentence in this case and I want the Defendant to understand that that in effect is different than the cases before us herein which there was a hearing and finding. Do you understand, Mr. Duplessis?"

After defendant indicated that he understood, the trial court allowed him to make a statement, during which he denied the allegations. The trial court then sentenced him to 10 years' imprisonment. We find that this sentence was clearly for the crime for which he had originally been convicted.

Next, defendant asserts that the trial court erred in allowing hearsay testimony of V.D.'s out-of-court disclosures. The State argues that this issue was waived because defendant did not file a post-hearing motion. Defendant contends that a post-hearing motion after a revocation of probation hearing is unnecessary to preserve an issue for review unless it is required by statute. We agree.

After considering the conflicting case law regarding whether a post-hearing motion is needed to preserve for review an issue in a vio-

lation of probation hearing (see generally *People v. Acevedo* (1991), 216 Ill. App. 3d 195, 576 N.E.2d 949; *In re W.D.* (1990), 194 Ill. App. 3d 686, 551 N.E.2d 357; *People v. Thomas* (1990), 193 Ill. App. 3d 525, 550 N.E.2d 29; *In re C.L.* (1989), 180 Ill. App. 3d 173, 534 N.E.2d 1330; *People v. Hargis* (1983), 118 Ill. App. 3d 1064, 456 N.E.2d 250), we find that defendant did not waive his argument since there is no statutory requirement under the revocation of probation provisions in the Unified Code of Corrections. Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4.

Generally, a witness' testimony cannot be bolstered with proof of the witness' out-of-court statements. (*People v. Baggett* (1989), 185 Ill. App. 3d 1007, 1015, 541 N.E.2d 1266.) In sexual assault cases, however, the complainant can show that she made a prompt complaint of the incident. (*People v. Gray* (1991), 209 Ill. App. 3d 407, 417, 568 N.E.2d 219.) Since the sole purpose of the exception is to rebut any presumption that might arise from the complainant's silence, only the fact of the complaint is admissible, not the details of the complaint or the identity of the named perpetrator. *Gray*, 209 Ill. App. 3d at 417.

■ We agree with defendant that V.D., Annette, and Ms. D were improperly permitted to testify to V.D.'s out-of-court statements made three weeks after the incident. Although it was permissible under the prompt complaint exception to allow into evidence the fact that V.D. made a complaint three weeks after the incident, the substance of the complaint was not admissible. We, however, find the error harmless. After considering the totality of the evidence presented, we can safely conclude that a hearing without this error would produce no different result. *People v. Warmack* (1980), 83 Ill. 2d 112, 128-29, 413 N.E.2d 1254.

Finally, defendant asserts that the trial court erred in closing part of the proceedings to those people it determined did not have a direct interest in the proceedings. We disagree.

Although there is a presumption that all trials are to be open to the public, that presumption may be overcome if the party seeking to close the hearing advances an overriding interest that is likely to be prejudiced if the hearing is not closed, the closure is not broader than is necessary to protect that interest, the trial court considers reasonable alternatives to closing the proceeding, and the trial court makes findings adequate to support the closure. *Waller v. Georgia* (1984), 467 U.S. 39, 48, 81 L. Ed. 2d 31, 39, 104 S. Ct. 2210, 2216; *Press-Enterprise Co. v. Superior Court of California* (1984), 464 U.S. 501, 508, 78 L. Ed. 2d 629, 637, 104 S. Ct. 819, 823.

Prior to the hearing, the State sought to close the hearing by advancing an overriding interest that was likely to be prejudiced. Relying on section 115—11 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—11), the State discussed the interest of the sexual crime victims under the age of 18 who would be testifying. Section 115—11 states that, in a criminal prosecution for certain sexual offenses,

"where the alleged victim of the offense is a minor under 18 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." Ill. Rev. Stat. 1989, ch. 38, par. 115—11.

The trial court then asked each challenged person what his or her interest was in the case. After the inquiry, the trial court excluded two of defendant's relatives, his fiancee, and his associates from church. Everyone was allowed back into the courtroom after the victims testified.

■ Since the physical and psychological well-being of a minor testifying in a rape case is a compelling interest (*People v. Morgan* (1987), 152 Ill. App. 3d 97, 102, 504 N.E.2d 172) and section 115—11 is constitutional (*People v. Priola* (1990), 203 Ill. App. 3d 401, 419, 561 N.E.2d 82), the trial court properly excluded those persons it determined did not have a direct interest in the case. We do not find that there was an abuse of discretion.

Based on the foregoing, we affirm the circuit court's judgment revoking defendant's probation. We also affirm defendant's sentence.

Affirmed.

RIZZI and GREIMAN, JJ., concur.