THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDMOND KEITH HILL, Defendant-Appellant.

Fifth District   No. 5—94—0747

Opinion filed July 21, 1997.—Rehearing denied August 8, 1997.

860

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, of counsel), for the People.

PRESIDING JUSTICE KUEHN delivered the opinion of the court:

This case features a six-year-old child witness whose testimony exhibited her understanding of fellatio and its effect upon the male sex organ. Her precocious sexual insight was attributed to defendant's sexual tutelage. Defendant was found guilty of aggravated criminal sexual assault and punished with an 18-year prison term. Defendant appeals.

This appeal challenges a court-ordered ban of evidence under the rape shield statute (725 ILCS 5/115—7 (West 1992)). The order precluded any mention during trial of the child witness's prior fellatio report with someone other than defendant. Defendant stands on

his constitutional right to present a full and fair defense. He argues that the rape shield statute's preclusion of other sexual conduct must yield where such conduct can rebut inferences of guilt that accompany a child witness's display of abnormal sexual knowledge.

Thus, we are asked to overturn the verdict, order a new trial, and direct that the next jury be fully informed about the child witness's age-inappropriate sexual knowledge. Defendant seeks a trial that includes evidence that rebuts the inference that his accuser's age-inappropriate knowledge of fellatio and its effects was derived from him. He wants to show that such knowledge had another male source.

The State's case against defendant rested entirely on the testimony of a little girl named A.H. A.H. told of many things commonly beyond the ken of little girls. She graphically described, in her own way, the appearance of defendant's sexual anatomy and the effects of fellatio on that anatomy. She described penile erection, ejaculation, ejaculate, and ejaculate's taste. Her uncommon mastery of sexual stimulation's physical effects placed her understanding of fellatio beyond question.

Thankfully, small voices rarely speak of such things. When they do, their message visits our senses with unparalleled persuasive force. The reason is simple. Society protects children from exposure to worldly matters. Society's norm anticipates sexual innocence. Children should be incapable of describing such things.

It shocks the senses to hear a little girl speak about fellatio. Such age-inappropriate knowledge compels an inference of child sexual abuse. Common sense shuns any other explanation.

When a child displays unique sexual knowledge and assigns it to experience with a defendant, the inference of guilt is overwhelming. As a rule, children are not sexually schooled or sexually active. The correctly held and widely accepted notion that children are sexually innocent fortifies inferences of guilt drawn from age-inappropriate sexual knowledge. The absence of sexual innocence, evinced by display of sexual knowledge, compels the conclusion that sexual abuse indeed occurred and that it occurred with the identified abuser.

Additionally, child sexual abuse is commonly considered to be isolated in nature. The conduct is too aberrant and perverse to be regarded as anything but an extremely rare occurrence. Hence, common views dispel any thought that age-inappropriate sexual knowledge could originate from a different sexual predator. When a child connects sexual knowledge to a defendant's rapacious acts, the accusation is strained through common perception in a way that creates a powerful inference of guilt.

So it was in this case. A small voice spoke with a power conferred

by its articulation of uncommon sexual knowledge. Such knowledge, however, was potentially derived from someone other than the man to whom A.H. attributed it. It is uncontroverted that A.H. reported the same acts with someone else.

On the eve of trial, the State successfully pursued the protection of the rape shield statute to ban mention of A.H.'s other report of sexual abuse. In summation, the State took advantage of the ban's preclusion. The State placed emphasis on A.H.'s unique sexual knowledge. It asked the jurors to ponder how many six-year-old children they knew who could tell A.H.'s story. The State seized upon the obvious. A.H.'s grasp of sexual detail at age six compelled a conclusion that she had suffered abuse.

The jury was only told of one potential source of A.H.'s uncommon knowledge. The State raised a shield to preclude evidence of any other source. It then proceeded to wield that uncommon knowledge as a potent weapon. The shield was fashioned into a sword that struck at the defense's very heart.

Defendant was rendered defenseless to the inferences of guilt freely drawn from A.H.'s display of sexual knowledge. He could not challenge the inference that the charged abuse occurred. Nor could he challenge the inference that the unique sexual knowledge must have been acquired from him. Because of the shield, there was no evidence from which to infer that A.H. acquired such knowledge in any other way.

The State readily concedes that, on occasion, the statutory shield must give way to constitutional considerations. 725 ILCS 5/115—7 (West 1992); *People v. Sandoval*, 135 Ill. 2d 159, 552 N.E.2d 726 (1990). It argues, however, that the evidence sought to be introduced must first be shown to establish bias, prejudice, or motive. It contends that a defendant's ability to provide an alternative explanation for age-inappropriate knowledge is not an approved constitutional exception to the rape shield statute.

The rape shield statute's preclusion of prior sexual conduct is not absolute. 725 ILCS 5/115—7 (West 1992). The statutory shield should never be mechanically applied to obscure relevant evidence that bears directly on guilt or innocence. The shield should be raised in a manner consistent with its purpose. That purpose is not to preclude relevant evidence. If it were, the statute could never conform with constitutional imperative under the sixth amendment's confrontation clause (U.S. Const., amend. VI) or the fourteenth amendment's due process clause (U.S. Const., amend. XIV). The rape shield statute is expressly designed to yield to constitutional protections that assure fair trials with just outcomes. 725 ILCS 5/115—7 (West 1992); *Sandoval*, 135 Ill. 2d 159, 552 N.E.2d 726.

■ The shield's primary purpose is to end an egregious practice that obscures truth and inhibits the report of sexual assaults. The shield ends collateral use of past sexual conduct as a basis for weighing an assault victim's credibility. Since sexual history has no bearing on conduct that forms the basis for the reported assault, the shield protects assault victims and their private lives from needless public exposure without harm to defendant's right to present a full and fair defense.

An assault victim's prior sexual conduct is normally irrelevant to the quest for truth. In most instances, it is tendered only to divert attention from material issues by shifting focus to irrelevant matters. Thus, in most instances, a witness's sexual history does not validly assist the trier of fact in weighing the guilt or innocence of an accused.

The shield preserves an assault victim's dignity. At the same time, it preserves the dignity of the fact-finding process. By keeping the intimate details of life intimate, it promotes sexual assault reports and rational decisionmaking based solely on relevant evidence.

■ Whenever the rape shield statute's preclusion of prior sexual conduct is invoked, a question of relevancy arises. If the evidence is probative, the statute's protection yields to constitutional rights that assure a full and fair defense.

In *Sandoval*, our supreme court provides some instances where a sexual assault victim's prior sexual history could be relevant and necessary to preserve a defendant's constitutional rights. Prior sexual conduct would have the necessary probative value if it could show bias, interest, or ulterior motive for making a false charge. *Sandoval*, 135 Ill. 2d at 174-75, 552 N.E.2d at 733. It would have the necessary probative value if it could explain physical facts in evidence such as semen, pregnancy, or a physical condition indicative of sexual intercourse. *Sandoval*, 135 Ill. 2d at 185, 552 N.E.2d at 738. Sexual history might also be relevant where the victim has engaged in a prior pattern of behavior clearly similar to the conduct immediately in issue. *Sandoval*, 135 Ill. 2d at 185, 552 N.E.2d at 738.

*Sandoval* does not impose any restriction on the type of circumstance that requires the statutory protection's subservience to constitutional imperative. It merely provides a sample of possible situations where prior sexual conduct would have the probative value necessary for admission into evidence. Contrary to the State's argument, nothing in *Sandoval* suggests limitation only to those circumstances where prior sexual history shows bias, prejudice, or motive. A fair reading of *Sandoval* instructs that prior sexual conduct may be

relevant to prove a fact in issue, in which case, it should be admitted. It calls for a case-by-case examination of the reason tendered for the introduction of prior sexual conduct to determine its probative value.

The true question is always one of relevancy. Where a child witness describes sexual acts and their biological effects, where that witness clearly demonstrates sexual insight beyond the ken of a normal child, is it relevant to defendant's guilt or innocence to show that the child possessed such insight from another source before attributing it to defendant? We ask whether a defendant can submit evidence of a child victim's prior sexual experience to negate the inference that flows from common perception that children are sexually innocent— the inference that a child of tender years must have acquired the ability to detail sexual acts from the accused because she could not have acquired it in any other way.

■ Clearly, A.H.'s sexual insight was relevant to whether a crime occurred. It was also relevant to who committed the crime. Its relevance was not lost upon the State. It assigned significant weight to a six-year-old's mastery of fellatio and its biological effects. It asked the jurors to credit A.H.'s claims by asking themselves how many six-year-old children they knew who could account for penile erection, ejaculation, and ejaculate. A.H.'s uncommon sexual knowledge lent credence to every aspect of her testimony.

We hold that, under proper circumstances, evidence of a child witness's prior sexual conduct is admissible to rebut the inferences that flow from a display of unique sexual knowledge. As this court has previously noted:

"When knowledge of sexual activities becomes an issue *** the rape-shield statute does not apply, and due process precludes its application." *People v. Mason*, 219 Ill. App. 3d 76, 79, 578 N.E.2d 1351, 1354 (1991).

We further hold that this particular exception must be narrowly drawn. When prior sexual abuse is tendered to explain age-inappropriate knowledge, the proof must be carefully examined before admission.

Contrary to previously noted common perception, child victims are often taken advantage of by more than a single abuser. The rebuttal of inferences created by age-inappropriate sexual knowledge is not an open invitation to indiscriminately present prior episodes of sexual abuse. See *People v. Leggans*, 253 Ill. App. 3d 724, 625 N.E.2d 1133 (1993). The prior sexual conduct must be sufficiently similar to defendant's alleged conduct to provide a relevant basis for its admission. It must engage the same sexual acts embodied in the child's testimony. Further, if the prior sexual conduct cannot fully rebut the

knowledge displayed, if it fails to account for certain sexual details unique to the charged conduct, its admission should be precluded. Simply put, the prior sexual conduct must account for how the child could provide the testimony's sexual detail without having suffered defendant's alleged conduct.

■ In this case, defendant challenges the preclusion of evidence of A.H.'s earlier report of repeated acts of fellatio with a boy named Jason. Defendant's argument recounts A.H.'s unique sexual knowledge:

> "Penises have hair around them, and a foreskin ring. Sexual stimulation of a penis by mouth and hands causes loss of 'control' which is 'why' ejaculate 'came out.' Ejaculate tastes salty. 'Wiping up' is necessary after ejaculation, as ejaculate may end up on someone's stomach after oral sex."

Defendant asserts that these details, highly age-inappropriate for a six-year-old, could have been the result of A.H.'s reported oral sexual experience with Jason.

The record reveals that Jason was another child with whom A.H. played. His age is unknown. The record is devoid of reference to his stage of maturation. Defendant offered to present nothing other than the prior reported episodes of fellatio with Jason. He did not support the tendered use of prior sexual conduct with a showing that A.H. described Jason's penis, his pubic hair, or his ejaculation in her sexual abuse report. In fact, the record suggests that Jason was too young to have pubic hair or produce ejaculate.

Although defendant demonstrated an ability to establish a similar sexual act, he failed to demonstrate that his proof could fully rebut A.H.'s unique sexual knowledge. A.H.'s knowledge was not derived from a prepubescent boy. Too many sexual details remain unaccounted for after consideration of what defendant hoped to prove with the prior sexual conduct. Thus, the prior sexual episodes with Jason are collateral to the inferences properly drawn from A.H.'s sexual knowledge and nonprobative to the issue of defendant's guilt or innocence. The suggestion that A.H.'s story could have been fabricated from knowledge she acquired from Jason would simply divert focus from the material issue and obfuscate the true evidentiary worth of A.H.'s unique sexual knowledge.

We find no fault with the trial court's ban of A.H.'s earlier reports of sexual abuse. When the defendant tendered the hope of proving earlier reports of fellatio with a young boy, the probative value of those reports was not sufficiently demonstrated. The necessary connection between those earlier sexual episodes and the sexual knowledge A.H. attributed to defendant was lacking, and the trial court

wisely chose to preclude it. In a proper case, defendant can prove prior sexual conduct in order to rebut the inferences that flow from age-inappropriate sexual knowledge. This, however, is not such a case. We affirm.

■ Defendant challenges the State's use of the age-inappropriate sexual knowledge after successful ban of defendant's alternative explanation for it. Defendant contends that the State's duplicitous tactics violate due process and warrant reversal. Contrary to defendant's argument, there was nothing duplicitous in the State's conduct. As previously noted, defendant failed to sufficiently connect Jason to the sexual detail contained in A.H.'s testimony. Jason's age is unknown. At best, the record suggests that he was less than 12 years old. Therefore, the tendered alternative explanation fails to account for description of an adult male sex organ and its sexual workings.

Under the circumstances, the prosecutor argued valid inferences to be drawn from the evidence. She did not breach her duty of fairness to defendant or, in any way, deprive defendant of a fair trial. She simply earned her pay by using the evidence's worth to the State's advantage. We would expect nothing less.

We affirm.

For the reasons stated, the judgment of the circuit court of Madison County is hereby affirmed.

Affirmed.

HOPKINS and MAAG, JJ., concur.