THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY ROY W., Defendant-Appellant.

Third District   No. 3—00—0841

Opinion filed August 17, 2001.

Marcia F. Straub, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Dawn D. Duffy, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

The defendant, Anthony Roy W., was convicted of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 1998)), and criminal sexual assault (720 ILCS 5/12—13) (West 1998)). He was sentenced to 20 years' imprisonment. The defendant filed a posttrial motion alleging ineffective assistance of counsel based on: (1) trial counsel's failure to present evidence that the victim had pending delinquency charges and was in the custody of the juvenile authorities at the time of trial; and (2) trial counsel's failure to present a witness who would testify that he had sexual intercourse with the victim one to two months before she made the allegation against her father. After careful consideration of the record and counsel's arguments, we reverse the defendant's convictions and remand for a new trial.

At trial, the following facts were presented. The victim is the defendant's daughter. The victim's mother voluntarily transferred custody of her to the defendant in 1993. She lived with him or his mother from 1993 until these allegations were made in 1999. The victim was 12 years old at the time of the complaint. On the day before she filed the complaint, the victim had an altercation with another child in the neighborhood. The victim went into the house and returned to the altercation carrying a large-bladed kitchen knife. She threatened the other child with the knife, but then returned home. When the defendant returned home and was told about the incident, he pushed the victim into a chair and grounded her. The next day when the defendant arrived home he found a note from the victim saying that she had gone to her grandmother's house. Before the defendant could determine where the victim was, the police arrived at his home and arrested him based on the victim's complaint. The victim was placed in the custody of her mother.

While in her mother's custody, the victim was arrested for retail theft and placed on house arrest at her mother's home. After she violated the terms of the house arrest, she was placed in the juvenile detention facility, and she was also charged with domestic battery against her mother. At the time of trial, the victim was facing both charges and was being held in the juvenile detention facility.

The victim testified that her father frequently beat her with an electrical cord. She said that he would make her take all her clothes off, and then he would beat her with the cord. During these beatings he would sometimes remove his clothing and sexually penetrate her

vagina or her anus with his penis. At trial she testified that this happened 14 times. She also testified that in the past she had a close relationship with two of her aunts, her father's girlfriends, and her grandmother. During the course of her testimony the victim occasionally smiled and appeared to laugh. At one point during cross-examination, defense counsel asked the victim, "Is this funny to you?" because of her demeanor.

Dr. Kay Saving testified that she is a pediatrician and a pediatric hematologist oncologist. She is the director of the Pediatric Resource Center, a program which provides medical evaluations for children who are possible victims of neglect or physical or sexual abuse. The doctor testified that she performed a full examination of the victim. The victim's hymen had a cleavage in the six o'clock position, which the doctor opined was consistent with sexual trauma to the vagina. The doctor stated that the victim also had some irritated tissue around her vagina and opined that this irritation was consistent with sexual abuse. On cross-examination, however, the doctor admitted that this type of irritation could be caused by sources other than sexual abuse, including poor hygiene. The doctor also stated that an examination of the rectum and anus revealed no unusual findings. Additionally, through the doctor, the State admitted several pictures of scarring on the victim's arm, buttocks and upper legs. The doctor opined that these scars were consistent with a child having received corporal punishment with an implement such as a folded electrical cord.

The police investigator assigned to the case testified that the victim told him that the defendant had sexual relations with her on nine occasions, and at another point in the interview she said the defendant had had sexual relations with her too many times to count. He also testified that they did not remove any physical evidence from the home, such as bed sheets or underwear, because they did not believe these items would have any evidentiary value.

The defense presented the victim's grandmother, two of her aunts, and her father's girlfriends as witnesses. All of these women testified that they had a good relationship with the victim. They all testified that the victim confided in them on personal subjects such as boys and her menstrual cycle. They all also testified that they spent time with the victim out of the presence of her father and that the victim had never told them about this alleged sexual abuse.

The victim's grandmother also testified that at times the victim had a hygiene problem, and her grandmother would have to ensure that she changed her underwear.

One of the defendant's girlfriends testified that she was with the defendant at the time the victim alleged the most recent incident of sexual abuse had occurred.

The defendant testified that he did use corporal punishment and that on occasion he would discipline his daughter with a belt. He denied that he made her take off all her clothes before he punished her. He also denied ever performing any sexual acts with his daughter.

The jury convicted the defendant. After his conviction, the defendant filed a *pro se* motion entitled, "Discovery Order." In this motion, he alleged that trial counsel was ineffective for failing to interview and call as a witness a juvenile, T.R. The defendant alleged that T.R., who was 14 years old, would testify that he and the victim had sexual intercourse in the summer of 1999 before the victim made the allegations against her father. New counsel was appointed for the posttrial proceedings. The new counsel filed a motion for a new trial, reasserting the defendant's complaint and also alleging that trial counsel was ineffective for failing to present evidence that the victim had pending charges and was in State custody at the time of trial.

At the hearing on that motion, T.R. testified that he was two years older than the victim. He lived next door to the victim's grandmother. One day in the summer of 1999 he and the victim had consensual sexual intercourse at his house when no one was home. He stated that this occurred before the defendant was arrested for sexually assaulting the victim.

Trial counsel also testified. He stated that he did not interview T.R. before the trial, but did speak to him afterwards. He stated that he did not attempt to admit the evidence of the victim's sexual relations with T.R. because he felt it would be inadmissible under the rape shield doctrine. He further testified that he did not attempt to present to the jury the fact that the victim had pending charges and was in State custody because he did not feel it was admissible evidence. The trial court let the verdicts stand and, after a sentencing hearing, sentenced the defendant to 20 years' imprisonment.

●1 The defendant asserts that trial counsel was ineffective for: (1) failing to interview T.R. and present his testimony at trial, and (2) failing to present evidence that the victim had pending charges and was in juvenile custody at the time of the trial. When reviewing an allegation of ineffective assistance of counsel, courts apply the two-prong analysis adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Under the *Strickland* analysis, the defendant must show that counsel's performance fell below an objective standard of reasonableness and that counsel's errors prejudiced the defendant. *Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). Decisions involving trial tactics are normally immune from claims of ineffective assistance of counsel. *People v. Trent*,

315 Ill. App. 3d 437, 734 N.E.2d 1 (2000). However, if counsel makes tactical decisions based on a misapprehension of the law, those decisions may cause counsel to be deemed ineffective. See *People v. Wright,* 111 Ill. 2d 18, 488 N.E.2d 973 (1986). In order for a defendant to be prejudiced by counsel's ineffective assistance, counsel's unprofessional errors must undermine confidence in the outcome of the trial. *People v. Enis,* 194 Ill. 2d 361, 743 N.E.2d 1 (2000).

## I

●2 To analyze the defendant's ineffectiveness claim, we must first look to the substantive law involved. The rape shield doctrine bars the admission of any evidence of prior sexual conduct by the victim, except for the victim's previous relations with the defendant, or "when constitutionally required to be admitted." 725 ILCS 5/115—7(a)(2) (West 2000). In some instances, due process requires the admission of evidence of the victim's sexual history where that evidence is relevant to a critical aspect of the defense. *People v. Hill,* 289 Ill. App. 3d 859, 683 N.E.2d 188 (1997). Evidence of the victim's prior sexual history may be admissible when that history explains some physical evidence, such as semen, pregnancy, or physical indications of intercourse. *People v. Sandoval,* 135 Ill. 2d 159, 552 N.E.2d 726 (1990).

●3 Here, T.R. testified at the posttrial motion hearing that he had sexual intercourse with the victim in the summer of 1999, before she made these allegations against her father. The victim was examined in mid-August 1999, at which time the cleft in her hymen was discovered. The State's expert could not determine when the victim might have had sexual intercourse. This evidence of sexual conduct provided a plausible alternative source of the State's physical evidence and would therefore be admissible under the constitutional exception provision of the rape shield doctrine. Trial counsel stated that he did not interview this witness until after trial because he felt that the evidence would be inadmissible under the rape shield doctrine. Counsel's failure to present this evidence meets the first prong of the *Strickland* standard.

Next, we turn to the second *Strickland* prong, prejudice to the defendant. The evidence in this case was closely balanced. The State's evidence consisted primarily of the victim's version of events and the physical evidence of sexual activity. The defendant testified and denied the allegations. The primary physical evidence corroborating the victim's accusations was the cleft in her hymen. The victim was 12 years old at the time of the alleged offense. The natural presumption with children is that they are sexually innocent. Therefore, a reasonable inference from the physical evidence presented was that the victim's father had sexually assaulted her. However, there was another

plausible explanation for that evidence that counsel did not present. If the jury had known this information, it might well have reached a different verdict. This error, standing alone, is sufficient to undermine our confidence in the outcome of the defendant's trial. As a result, we find that the defendant has met his burden under both prongs of *Strickland* and shown that counsel was ineffective.

## II

•4 The defendant also asserts that trial counsel was ineffective for failing to present evidence that the victim was in State custody and facing charges. Again, we apply the two-prong *Strickland* test. First, to analyze whether counsel's performance was not objectively reasonable, we must look to the substantive law. A witness may be impeached by presenting evidence that the witness has pending charges or is in State custody at the time of trial, as it tends to show the testimony may be influenced by bias, interest, or motive to lie. *People v. Triplett*, 108 Ill. 2d 463, 485 N.E.2d 9 (1985); *People v. Bull*, 185 Ill. 2d 179, 705 N.E.2d 824 (1998). A defendant need not show that the witness has been promised leniency; the evidence must only give rise to the inference that the witness has something to gain by testifying. *People v. Davis*, 185 Ill. 2d 317, 706 N.E.2d 473 (1998). Additionally, the witness need not be in custody on charges related to those on which the defendant is being tried. *Triplett*, 108 Ill. 2d 463, 485 N.E.2d 9.

•5 Here, the victim was the only eyewitness against the defendant. She had pending charges for retail theft and domestic battery against her mother and was in State custody at the time of the defendant's trial. This evidence was admissible to show bias or a possible reason for the victim to fabricate her testimony. Trial counsel's assumption that the evidence was not admissible was mistaken. His failure to introduce this evidence was not objectively reasonable, and the defendant has met the standard of the first prong of the *Strickland* test.

Next, we must determine if counsel's performance prejudiced the defendant. Here, the credibility of the victim was critical to the State's case. Evidence that she might have been biased or had a motive to lie could have changed the jury's decision. The failure of trial counsel to admit this evidence substantially undermines our confidence in the verdict, and we conclude that the defendant was prejudiced by counsel's ineffectiveness. The defendant has met the two-prong *Strickland* test and shown counsel was ineffective.

For the foregoing reasons, the judgment of the circuit court of

Peoria County is reversed and this cause is remanded for a new trial consistent with this opinion.

Reversed and remanded.

McDADE and SLATER, JJ., concur.