THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TEDDY E. SUMMERS, Defendant-Appellant.

Fourth District   No. 4—03—1059

Argued July 21, 2004.—Opinion filed November 12, 2004.

APPLETON, J., specially concurring.

Gary F. Geisler (argued), of Geisler Law Offices, of Decatur, for appellant.

C. Steve Ferguson, State's Attorney, of Charleston (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant, Teddy E. Summers, appeals from his conviction of predatory criminal sexual assault of a child. 720 ILCS 5/12—14.1(a)(1) (West 2002). On appeal, defendant argues that (1) the evidence against him was contradictory and inconsistent, such that reasonable doubt of guilt remained; (2) the trial court erred in refusing to allow defendant to inquire about the victim's prior sexual conduct; (3) the court erred in allowing witness testimony regarding defendant's prior incarceration; (4) the court erred in allowing testimony and the recordings of telephone calls made by defendant and his wife following the incident; (5) the sex-offender-specific evaluation should have been stricken because it contained unauthorized disclosures of confidential information given during treatment; (6) the court erred in imposing an extended-term sentence of 42 years' imprisonment; and (7) the court considered an improper factor when imposing a sentence that is both harsh and excessive. We affirm.

## I. BACKGROUND

On September 12, 2002, defendant; his wife, Kelly; and their two children, W.S., age 8, and K.S., age 5, visited Mattoon and the home of George Davis; his wife Melissa; and their two children, C.D., age 12, and J.D., age 5. Melissa had thrown a home and garden party in the afternoon, and defendant and his family stayed afterward to have a cookout. While Melissa's party was going on, defendant, George, and the children went to the park and played. They returned at a little past 6 p.m., after the party ended. At around 6:30, George testified that he started grilling on the back porch while Melissa and Kelly cooked side dishes in the kitchen. George stated that he went in and out of the house several times because he was also cooking twice-

baked potatoes in the kitchen. All of the children were playing in the backyard. Defendant helped George with the grilling but at times would stop and smoke a cigar on the back stoop.

At some point before dinner, C.D., then age 12, testified that he needed to use the restroom, but because someone was using the one in the house, he urinated behind a bush near the back stoop. He testified that defendant followed him and asked if he could "see his pecker" and was wanting to look at his penis and pinch it. C.D. testified that defendant asked if he could touch C.D.'s penis and that C.D. told him that he could not. C.D. testified that defendant told him not to tell anyone because if he did, defendant would go back to jail and lose his family.

Everyone sat down to eat dinner at around 7:30, and they finished at around 8:30. After dinner, Melissa played a digital video disk (DVD) movie for the children in the living room. C.D. testified that he once again went outside to use the "restroom," and once again, defendant followed him. C.D. testified that defendant was asking him if he could touch his penis and was asking about the size of it. C.D. again rebuffed defendant and went inside and sat down on the couch. He testified that defendant went into C.D.'s parents' room.

After dinner was cleaned up and the movie had been started for the children, all of the adults went into George and Melissa's bedroom. Melissa and Kelly watched television, and George loaded a bowling game for defendant and him to play on the computer. C.D. testified that at some point later, George told the children to get their bedclothes on. C.D. went into the bathroom, which has two doors but only one that locks. He was urinating when defendant entered the bathroom. Again, defendant asked C.D. if he could touch his "pecker" and was making measurements with his thumb and finger, trying to guess the size of C.D.'s penis. C.D. testified that once again he told defendant, "no." Defendant then cornered C.D. in the bathroom, dropped to his knees, and began to suck on C.D.'s penis. C.D. testified that he did not know how long this lasted but that he did not ejaculate. When defendant stopped, C.D. pulled up his pants and ran out into the living room. He stated that the children were still playing in the living room and the adults were all in his parents' room. C.D. then went into his bedroom and changed his clothes for bed.

George testified that while he was playing the bowling game with defendant, defendant stated that he was going to go change his clothes for bed. Defendant then left the room for what "seemed like forever, but it was about [15] or [20] minutes." When defendant returned, he had not changed his clothes, and he was spilling a cup of coffee all over the floor. George testified that defendant told him he would

change later. Melissa also testified that she noticed that defendant left the room for a long period of time while she and Kelly watched television. Both defendant and Kelly denied that defendant ever left the room, but they did admit that he went to get a cup of coffee and that he was spilling it.

After everyone had gotten ready for bed, C.D. lay down on the couch in the living room. Next to the couch on the floor was defendant, K.S., and Kelly. W.S. was on the love seat next to Kelly. As everyone was getting into bed, C.D. testified that defendant was pulling the blankets off of him and touching him on the shoulder, telling him not to tell anyone because otherwise defendant would not get to see his wife and kids anymore. C.D. got up and went into his parents' room and asked if he could sleep on the floor in there. They let him, and he lay down on the floor. A few minutes later, defendant came into the room to apologize for doing anything to offend C.D. Kelly testified that defendant did not say anything to C.D. when C.D. was on the couch in the living room but did say that he was teasing C.D. by playing with his blanket.

The next morning, everyone woke up at around 7 a.m. Defendant and his family returned to their home in Decatur. Later that evening, C.D. told his parents what had happened the other night. After calling a friend from church for advice, George called the police and reported the incident.

Following a jury trial, defendant was convicted of predatory criminal sexual assault of a child. The trial sentenced him to an extended term of 42 years' imprisonment. This appeal followed.

## II. ANALYSIS

### A. Reasonable-Doubt Challenge

Defendant's first argument on appeal is that the evidence put forth by the State did not prove him guilty beyond a reasonable doubt. He points to various discrepancies in the testimonies of different witnesses about what time certain things occurred during the evening. He also argues that many of the contentions made by C.D. lack corroboration and that C.D.'s testimony of what happened is inconsistent with how C.D. acted that evening and the next morning.

When a defendant challenges the sufficiency of the evidence, it is not a function of this court to retry the defendant. *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004). A reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Evans*, 209 Ill. 2d at 209, 808 N.E.2d at 947. We will not reverse a conviction

unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *Evans*, 209 Ill. 2d at 209, 808 N.E.2d at 947.

Here, defendant does not raise any challenges that create a reasonable doubt of his guilt. One would expect at a gathering with four adults and four children that each person's recollection of the events would vary slightly. Defendant can point only to these minor inconsistencies between the witnesses' statements.

■ Defendant claims that C.D.'s actions were inconsistent with what he alleged happened and are not persuasive either. Defendant claims that C.D. remained friendly with him, even after he allegedly assaulted him. Defendant also notes that C.D. waited until the following evening before telling anyone about what had happened to him. A delay in reporting incidents of sexual abuse may be reasonable where the victim's silence can be attributed to fear of the offender or to shame, guilt, and embarrassment. *People v. Duplessis*, 248 Ill. App. 3d 195, 199, 618 N.E.2d 1092, 1096 (1993). A 12-year-old boy could certainly be confused, ashamed, or embarrassed after being assaulted by a person he looked upon as a close family friend. Further, determinations of credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. *Duplessis*, 248 Ill. App. 3d at 200, 618 N.E.2d at 1096. We hold that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based upon the evidence presented at trial.

## B. C.D.'s Prior Conduct

■ Defendant next argues the trial court erred in granting the State's motion *in limine* to exclude any evidence of C.D.'s prior conduct as a sex offender, which was the subject of a juvenile-delinquency action. C.D. had been adjudicated delinquent when he had, on two or three occasions, placed his penis between his younger half brother's buttocks. Defense counsel argued C.D.'s prior conduct and prior adjudication should be admissible, first as impeachment and second to show the minor had sufficient knowledge of sexual matters to be able to fabricate the facts of this particular episode. The State conceded the juvenile adjudication was admissible, for any witness other than the accused, but argued it would not be fair to admit the juvenile's conviction but not defendant's. The trial court rejected that argument but excluded the juvenile adjudication. The court ruled the prejudicial effect outweighed the probative value and the sexual activity in the juvenile adjudication differed from the sexual activity charged, citing *People v. Hill*, 289 Ill. App. 3d 859, 683 N.E.2d 188 (1997).

Illinois's rape-shield statute was enacted in 1978. The policy underlying the rape-shield statute is to prevent the defendant from harassing and humiliating the complaining witness with evidence of either her reputation for chastity or specific acts of sexual conduct with persons other than defendant, since such evidence has no bearing on whether she consented to sexual relations with the defendant. *People v. Ellison*, 123 Ill. App. 3d 615, 626, 463 N.E.2d 175, 183 (1984). The supreme court expressed concern over the original statute's complete prohibition of evidence of the complainant's prior sexual activity with someone other than the defendant, noting that a defendant's constitutional rights may sometimes require the admission of such evidence. *People v. Sandoval*, 135 Ill. 2d 159, 174-75, 552 N.E.2d 726, 733 (1990). Thereafter, the General Assembly in 1994 amended the rape-shield statute to expressly provide that the prior sexual activity of the complainant may be admitted "when constitutionally required." 725 ILCS 5/115—7(a) (West 1998).

The constitution requires that a defendant "be permitted to offer certain evidence which was *directly* relevant to matters at issue in the case, notwithstanding that it concerned the victim's prior sexual activity." (Emphasis in original.) *People v. Santos*, 211 Ill. 2d 395, 405-06, 813 N.E.2d 159, 164 (2004). Examples of direct relevance include evidence that complainant had sex a month before the alleged assault, which would explain physical evidence of a cleft hymen. *People v. Anthony Roy W.*, 324 Ill. App. 3d 181, 186-87, 754 N.E.2d 866, 870 (2001). Another example is evidence of a child victim's viewing of adult videotapes, which would explain her sexual knowledge, which had been submitted as evidence of abuse. *People v. Mason*, 219 Ill. App. 3d 76, 78-79, 578 N.E.2d 1351, 1353 (1991).

"The true question is always one of relevancy." *Hill*, 289 Ill. App. 3d at 864, 683 N.E.2d at 191. How is the fact that the complaining witness was adjudicated delinquent in 2001 because of sexual conduct with a young boy, or was a prior victim of sexual abuse by a minor, relevant to the issues in this case? Defendant argues the adjudication was admissible because it explains how the complaining witness had sufficient knowledge of sexual matters to be able to fabricate his story. Defendant cites *Mason* for that proposition, but in *Mason*, the complaining witness was only seven years old (*Mason*, 219 Ill. App. 3d at 77, 578 N.E.2d at 1353). There was no suggestion in this case that the complaining witness's sexual knowledge could only have come from the incident charged. "Simply put, the prior sexual conduct must account for how the child could provide the testimony's sexual detail without having suffered [the] defendant's alleged conduct." *Hill*, 289 Ill. App. 3d at 865, 683 N.E.2d at 192 (six-year-old girl's experience with a prepubescent boy inadmissible in prosecution of an adult male).

Is there some relevance in the fact that the complaining witness here was not the victim in the prior incident but the perpetrator? Could the fact that a complaining witness had been convicted of felony prostitution be admitted on the issue of her credibility? See *People v. Ivory*, 139 Ill. App. 3d 448, 453, 487 N.E.2d 1035, 1039 (1985) (misdemeanor prostitution conviction not admissible). Evidence of a juvenile adjudication of a witness other than the defendant may be employed in a criminal case for purposes of attacking the credibility of a witness. *People v. Kerns*, 229 Ill. App. 3d 938, 940, 595 N.E.2d 207, 208 (1992); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 609.9, at 486 (7th ed. 1999). We are normally less concerned with prejudicial effect on a witness than prejudicial effect on a defendant. See *People v. Paul*, 304 Ill. App. 3d 404, 410, 710 N.E.2d 499, 503 (1999). The rape-shield statute changes that dynamic, however. We must now be concerned with unnecessary harassment and humiliation of the complaining witness. Minimally relevant evidence of prior sexual activity should not be admitted. The "constitutionally required" exception to the rape-shield statute "should be construed narrowly, but also fairly." *Santos*, 211 Ill. 2d at 416-17, 813 N.E.2d at 170 (McMorrow, C.J., dissenting). Apart from the rape-shield statute, preserving the anonymity of a juvenile's record may justify excluding the adjudication where the juvenile was neither the only witness nor a crucial witness essential to the prosecution. *People v. Eatherly*, 78 Ill. App. 3d 777, 784, 397 N.E.2d 533, 538 (1979).

We conclude the trial court did not abuse its discretion in deciding that the prejudicial effect of the juvenile adjudication outweighed the probative value and the sexual activity in the juvenile adjudication differed from the sexual activity charged.

## C. C.D.'s Testimony

■ Defendant argues that the trial court erred in allowing C.D. to testify that he did not know that defendant had ever been to jail. C.D. testified that defendant told him "not to tell, because if I did, he would go back to jail and lose his family." Later, during C.D.'s testimony, the State's Attorney asked C.D., "[D]id you know anything about if Teddy had even been to jail?" C.D. responded that he did not. Defendant argues that these remarks were both highly prejudicial toward him and also violated the court's ruling barring evidence of defendant's 1995 conviction for aggravated sexual abuse. We agree the question was improper but conclude that defendant was not prejudiced.

C.D.'s testimony that defendant told him "not to tell, because if I did, he would go back to jail and lose his family," was admissible as an admission. Any statement by an accused person, unless excluded by

the privilege against self-incrimination or other exclusionary rules, may be used against him as an admission, even if it is not inculpatory or against interest. *People v. Campbell*, 332 Ill. App. 3d 721, 725, 773 N.E.2d 776, 780 (2002). Defendant's cited case of *People v. Edwards*, 343 Ill. App. 3d 1168, 799 N.E.2d 899 (2003), does not provide him any support. In *Edwards*, the trial court had ruled on a motion *in limine* that the statement " 'I've killed and I'll kill again,' " made by the defendant to a witness, was inadmissible. *Edwards*, 343 Ill. App. 3d at 1182, 799 N.E.2d at 910. Here, when the court barred evidence of defendant's prior conviction, it specifically stated that the comment about going back to jail made by defendant to the victim was not prohibited by the order and was allowable. Further, in *Edwards*, the appellate court determined that the trial court did not abuse its discretion when it refused to grant a mistrial after it was alleged that the witness repeated the statement made by the defendant. *Edwards*, 343 Ill. App. 3d at 1183, 799 N.E.2d at 911. Likewise, we can find no such error here.

### D. Admission of Telephone Recordings

■ Defendant next argues that the trial court erred in allowing testimony and recordings of telephone calls made by the defendant and his wife following the incident. However, defendant did not include the recordings or a transcript of the recordings in the record. To support a claim of error on appeal, the appellant has the burden to present a sufficiently complete record. *Webster v. Hartman*, 195 Ill. 2d 426, 432, 749 N.E.2d 958, 962 (2001). Without being able to examine the contents of the recordings, we cannot determine whether it was error to admit them. *Webster*, 195 Ill. 2d at 432, 749 N.E.2d at 962.

■ Defendant next argues that the sex-offender-specific evaluation included in his presentence investigation report should have been stricken because it contained unauthorized disclosures of confidential information given during treatment. In composing the evaluation, the court-appointed psychologist used information from the evaluation and treatment of defendant in 1995 subsequent to his conviction for aggravated sexual abuse. Defendant contends that any information he provided in 1995 was privileged and is confidential under the physician-patient privilege found in section 8—802 of the Code of Civil Procedure (735 ILCS 5/8—802 (West 2002)) and under section 3(a) of the Mental Health and Developmental Disabilities Confidentiality Act (Act) (740 ILCS 110/3(a) (West 2002)). We disagree.

The Act provides that all records and communications shall be confidential and shall not be disclosed except as provided in this act. 740 ILCS 110/3(a) (West 2002). The evaluation of defendant and his

treatment certainly fall within the auspices of the Act (see 740 ILCS 110/2 (West 2002)). However, defendant's 1995 evaluation and treatment were pursuant to a court order. The Act specifically exempts records and communications made to or by a therapist in the course of examination ordered by a court. 740 ILCS 110/10(a)(4) (West 2002). The general physician-patient privilege in section 8—802 of the Code of Civil Procedure (735 ILCS 5/8—802 (West 2002)) is also not applicable when the examination was court ordered. *People v. Lowe*, 109 Ill. App. 2d 236, 239, 248 N.E.2d 530, 532 (1969). Because defendant's 1995 evaluation and treatment were conducted pursuant to a court order, they were not privileged, and the trial court could properly rely upon the information contained therein.

## E. Defendant's Extended-Term Sentence

■ Defendant next argues that the trial court erred in imposing a 42-year extended-term prison sentence. Defendant seemingly argues that because the age of the victim was already taken into account in the elements of the offense of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 2002)), the trial court could not consider the age of the victim in enhancing defendant's sentence. In support of his argument, defendant cites *People v. Ferguson*, 132 Ill. 2d 86, 97, 547 N.E.2d 429, 433 (1989), in which the supreme court stated:

> "Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense, absent a clear legislative intent to accomplish that result."

In *Ferguson*, the court found that the legislative intent was not clearly expressed to allow further enhancement of the sentences of the defendants based upon the victims' ages. *Ferguson*, 132 Ill. 2d at 98, 547 N.E.2d at 434. Here, however, the legislative intent could not be more clear. Section 5—5—3.2(c) of the Unified Code of Corrections clearly provides:

> "The court may impose an extended[-]term sentence under [s]ection 5—8—2 upon any offender who was convicted of *** predatory criminal sexual assault of a child under subsection (a)(1) of [s]ection 12—14.1 of the Criminal Code of 1961 [(720 ILCS 5/5—12—14.1(a)(1) (West 2002))] where the victim was under 18 years of age at the time of the commission of the offense." 730 ILCS 5/5—5—3.2(c) (West 2002).

The legislature clearly intended to permit the courts to consider the age of the victim as an aggravating sentencing factor despite the fact that the age of the victim is a factor that is implicit in the offense.

Defendant also apparently argues that for the sentencing enhancement to apply, the trial court needed to separately submit the fact that

C.D. was under 18 years of age to the jury. This argument has no merit. To convict a defendant of predatory criminal sexual assault of a child, the jury was required to find that the victim was under 13 years of age. 720 ILCS 5/12—14.1(a)(1) (West 2002). To require a separate instruction that it find the victim was also under 18 years of age is ludicrous. Inherent in finding the victim is under 13 is finding that the victim is under 18. Defendant's sentence was not improperly enhanced.

### F. Sentence as Excessive

■ Finally, defendant argues that the sentence imposed should be vacated because the court considered improper factors, failed to consider statutory factors, and was harsh and excessive. A trial court has wide discretion in sentencing and should be reversed only when it abuses that discretion. *People v. Patterson*, 347 Ill. App. 3d 1044, 1056, 808 N.E.2d 1159, 1168 (2004). Defendant contends that the court improperly relied upon personal belief that sex offenders were likely to reoffend. The record does not support such a contention. The court specifically referred to the United States Supreme Court's decision in *McKune v. Lile*, 536 U.S. 24, 32-33, 153 L. Ed. 2d 47, 56, 122 S. Ct. 2017, 2024 (2002), which found that sex offenders are a serious threat to the nation and that they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. Additionally, the court relied upon defendant's own history, noting that this was, in fact, defendant's second sex offense.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., concurs.

JUSTICE APPLETON, specially concurring:

I concur with the decision of the majority but write separately to more sharply examine the issue raised by defendant concerning the use of the records of his previous court-ordered evaluation. The majority is correct that such records are not privileged under the confidentiality statute. See 740 ILCS 110/10(a)(4) (West 2000). However, the privilege is not deemed waived unless the mental-health provider advises the person being evaluated that the communications made during the evaluation are not privileged and may be revealed to the trial court.

Here, no evidence shows whether defendant was so advised during his 1995 evaluation. As it is defendant's burden to preserve the issue for review, I am not willing to presume that defendant was not so advised and accordingly concur.