2018 IL App (4th) 160138

NO. 4-16-0138

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Ford County |
| BILLY J. STEVENS, | ) | No. 15CF22 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Matthew J. Fitton, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Steigmann and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1        In February 2015, the State charged defendant, Billy J. Stevens, with two counts of predatory criminal sexual assault of a child. In July 2015, the trial court conducted the first jury trial, which resulted in a deadlocked jury and a new trial. The second jury trial took place in October 2015. The jury found defendant guilty, and he was sentenced to 25 years' imprisonment.

¶ 2        On appeal, defendant argues the trial court erred in (1) admonishing the prospective jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012); (2) giving Illinois Pattern Jury Instructions, Criminal, No. 3.01 (4th ed. 2000) (hereinafter IPI Criminal 4th); and (3) not giving IPI Criminal 4th No. 11.66. Additionally, defendant argues the State committed error by (1) improperly bolstering the credibility of the victim, M.S., through the testimony of a witness; (2) questioning defendant about M.S.'s motivation to lie; (3) asking the

jury about the message its verdict would send; and (4) bringing up details not in evidence at trial during closing arguments. We reverse and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4         Around November or December 2014, defendant was separated from his wife and was living in his mother's home. During that time, his daughter, M.S., born in 2003, went to visit him at this residence. One night, while M.S. was watching a movie in her cousin's room, she said defendant came in and hugged her. After hugging her, defendant put his hand in her vagina and then did the same with his penis. M.S. testified defendant had done this repeatedly throughout M.S.'s life since she was three or four. After the most recent occurrence in November or December 2014, M.S. told her school's social worker, who notified the guidance counselor and the police.

¶ 5         As a result, in February 2015, the State charged defendant by information with two counts of predatory criminal sexual assault of a child, alleging defendant, who was 17 years of age or older, committed an act of sexual penetration with M.S., who was under 13 years of age, in that defendant placed his penis (count I) and his finger (count II) in the vagina of M.S on or about November 2014 through December 2014 (720 ILCS 5/11-1.40(a)(1) (West 2014)).

¶ 6         The first trial was conducted in July 2015 and resulted in a hung jury. Defendant was retried on the same charges in October 2015. At the second jury trial, the State called four witnesses, M.S., Kristina Schuler, Mary Bunyard, and Sergeant Chad Johnson. Defendant was the sole witness in his case-in-chief.

¶ 7                                    A. M.S.

¶ 8         M.S. testified in detail about the night she was at her grandmother's house and what her father did to her, stating she was 11 years old at the time. She described the house she

lived in with her mother and brother as a two-story home, with her room being upstairs. She stated, on some occasions when she would fight with her mother, defendant would come to her room to calm her down and then molest her, which began around the age of three or four. After the most recent occurrence at her grandmother's house, M.S. told her school's social worker, Schuler.

¶ 9                                 B. Kristina Schuler

¶ 10         Schuler is the social worker at M.S.'s school and has served in that capacity for the past nine years. Schuler knew M.S. from working with her on an individualized education plan, beginning in August 2014. They would meet weekly for about 20 minutes each session. She described M.S. as "very quiet, very shy" when she first met her, but as the year progressed, M.S. became more comfortable. She also testified that as time went on she had to do less prodding to get information from M.S. and never had a problem with M.S. lying. On February 5, 2015, M.S. came to her regular session with Schuler and said she wanted to tell her and the school guidance counselor, "Mrs. Johnson," something. The guidance counselor was unavailable, so Schuler asked if M.S. wanted to just speak to her. M.S. said her father "sexually abused" her and touched her, pointing to her private area. Schuler did not ask any follow-up questions in order to avoid interfering with any criminal investigation and contacted "the authorities." She told M.S. she was sorry to hear about these allegations and she would contact people to make sure M.S. was safe.

¶ 11                                 C. Mary Bunyard

¶ 12         Bunyard is a forensic interviewer with the Children's Advocacy Center, where she has worked for two years. Prior to that, she was in law enforcement for 20 years, 10 years as a patrol officer and 10 years as a detective. She interviewed M.S. while representatives from the

Department of Children and Family Services and law enforcement watched from another room. She testified that she asked mostly open-ended questions in the interview. The interview with M.S. was audio recorded and played to the jury as an exhibit during Bunyard's testimony. After playing the audio recording, the State asked where M.S. said she was touched, and Bunyard said M.S. indicated she was touched in her 'private area.'

¶ 13                                    D. Sergeant Chad Johnson

¶ 14       Sergeant Johnson is a sergeant with the Paxton Police Department and was the lead investigator in this case. He interviewed defendant and stated defendant would have been 34 years old at the time of the alleged conduct. In the interview, defendant denied the allegations but never said M.S. was lying. When asked if defendant had an explanation for the allegations, defendant referenced a conversation with his daughter about whether the new bras she bought with her mother fit, but he claimed he did not touch her. Sergeant Johnson also observed the interview with M.S. The details of her timeline and defendant's timeline were "right on track," meaning the timelines "were exactly the same."

¶ 15                                    E. Defendant

¶ 16       Defendant testified on his own behalf and stated he had been living with his mother for the past three months or so since he was separated from his wife. He testified about his convictions for theft and driving with a revoked license. He described his relationship with his daughter as good and said M.S. would come to him if she had problems. He described the family home before the separation as a two-story home where he and his wife shared a bedroom on the first floor and the two children each had their own bedroom on the second floor. He denied each of the specific allegations in his testimony. He also admitted, when M.S. came over to visit while defendant was living in his mother's home, they would sleep in the same room,

- 4 -

with M.S. on one bed and defendant on another. He also admitted on cross-examination that he would go to M.S.'s room at times to calm her down. On cross-examination, he was unable to give any reason why his daughter was making up these "horrible accusations."

¶ 17     The jury found defendant guilty on both counts, and the trial court sentenced defendant to 25 years' imprisonment in the Illinois Department of Corrections.

¶ 18     This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20                         A. *Voir Dire* Admonishments

¶ 21     Defendant argues the trial court erred by failing to properly inquire of the jury pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), commonly referred to as the four *Zehr* principles (see *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984)). Specifically, defendant contends the court failed to ask prospective jurors whether they understood the State's burden of proof or that defendant was not required to present evidence. The State concedes error on this contention, and we accept the State's concession.

¶ 22     Rule 431(b) requires the trial court to ask each potential juror

> "whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's

decision not to testify when the defendant objects." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

"The language of Rule 431(b) is clear and unambiguous," mandating "a specific question and response process." *People v. Thompson*, 238 Ill. 2d 598, 607, 939 N.E.2d 403, 409-10 (2010). A trial court "must ask each potential juror whether he or she understands and accepts each of the principles in the rule," and "the rule requires an opportunity for a response from each prospective juror on their understanding and acceptance of those principles." *Thompson*, 238 Ill. 2d at 607. We review *de novo* whether the trial court followed Rule 431(b). *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 37, 959 N.E.2d 693.

¶ 23       Here, the trial court asked the prospective jurors whether they were "unable and unwilling to accept and embrace" that "all persons charged with a crime are presumed to be innocent." Second, it asked the jurors whether they were "unable or unwilling to accept or embrace and apply the principle" that "it is the burden of the State who has brought the charge to prove the Defendant guilty beyond a reasonable doubt." Regarding the third principle that "defendant has no obligation to testify on his own behalf," the court asked if anyone had "a problem with that principle." The court inquired whether any jurors had "a problem or cannot accept" the fourth principle concerning defendant having no obligation to call any witnesses or present any evidence in his defense. Later in *voir dire*, the court asked the jurors as a group, "[d]o you understand this is a criminal case and the Defendant is presumed innocent as he is charged?" The court followed up by asking, "You understand the Defendant in this case has a constitutional right to not testify? If in fact he does not testify that in anyway [*sic*] cannot make any difference in you arriving at any decision you might make." The court failed to ask whether

the jurors understood the State's burden of proving defendant guilty beyond a reasonable doubt and that defendant was not required to offer any evidence on his behalf.

¶ 24    In *People v. Wilmington*, 2013 IL 112938, 983 N.E.2d 1015, our supreme court determined whether a trial court erred in following Rule 431(b) by asking the prospective jurors if they disagreed with three of the principles enumerated in Rule 431(b). Our supreme court stated it was arguable whether the trial court's inquiry, asking for disagreement and getting none, was equivalent to asking for acceptance. *Wilmington*, 2013 IL 112938, ¶ 32. However, the court held "the trial court's failure to ask jurors if they *understood* the four Rule 431(b) principles is error in and of itself." *Wilmington*, 2013 IL 112938, ¶ 32.

¶ 25    In this case, it is arguable the trial court asked the prospective jurors whether they could accept the Rule 431(b) principles by asking if they had a problem with them. As we stated in *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 35, 92 N.E.3d 494, "trial judges must strictly comply with Rule 431(b)." The rule ensures jurors understand and accept the bedrock principles of our criminal law, and failing to comply "could threaten the integrity of the jury's verdict" or "cast doubt on any guilty verdict a jury might return." *McGuire*, 2017 IL App (4th) 150695, ¶ 35. "Trial courts must exercise diligence when instructing the jury of the *Zehr* principles as codified in Rule 431(b) and must not deviate in any way from the precise language chosen by the Illinois Supreme Court to be in that rule." *McGuire*, 2017 IL App (4th) 150695, ¶ 35. In order to protect the record, prosecutors must also be aware of the strict requirement of Rule 431(b) so "they can alert the trial court to any improper deviation from that rule." *McGuire*, 2017 IL App (4th) 150695, ¶ 35.

¶ 26    In this case, it is clear the court never asked whether the jurors understood the State's burden to prove defendant guilty beyond a reasonable doubt or the fact that defendant

was not required to present evidence on his own behalf, and thus the court committed error. The language of Rule 431(b) is clear; the four principles are set forth succinctly, and the two questions to be asked, in whatever manner the court chooses, are simple: "do you understand" and "do you accept."

¶ 27 Defendant did not object to the admonishments during the *voir dire*. Ordinarily, "[t]o preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion." *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675. If not, the error results in forfeiture. *Sebby*, 2017 IL 119445, ¶ 48. However, there is a well-established exception to that principle. *Sebby*, 2017 IL 119445, ¶ 48. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides "substantial or what have become known as plain errors may be noticed although they were not brought to the attention of the trial court." (Internal quotation marks omitted.) *Sebby*, 2017 IL 119445, ¶ 48. This *voir dire* error is subject to a plain-error analysis. *Wilmington*, 2013 IL 112938, ¶ 31. For the sake of convenience and to avoid repetition, we will address each of defendant's claimed unpreserved errors in one plain-error analysis later.

¶ 28                    B. IPI Criminal 4th No. 3.01

¶ 29 Defendant argues the trial court erred in giving IPI Criminal 4th No. 3.01, which states the prosecution is not required to prove that the offense was committed on the particular date charged, to the jury. We disagree.

¶ 30 "Generally, the decision to give certain jury instructions rests with the trial court, and that decision will not be reversed on appeal absent an abuse of that discretion." *People v. Hale*, 2012 IL App (4th) 100949, ¶ 19, 967 N.E.2d 476.

"Giving IPI Criminal 3d No. 3.01 [(Illinois Pattern Jury Instructions, Criminal, No. 3.01 (3d ed. 1992))] may result in reversible error, (1) where inconsistencies between the date charged in the indictment and the evidence presented at trial are so great that the defendant is misled in presenting his defense or (2) when he presents an alibi for the time alleged in the indictment and is thereby prejudiced because he failed to gather evidence and witnesses for the time actually proved by the State." *People v. Suter*, 292 Ill. App. 3d 358, 364, 685 N.E.2d 1023, 1028 (1997).

¶ 31 Here, defendant asserts no alibi to the allegations and in fact acknowledged he was present on the night in question; thus, the second prong is not invoked here. Instead, the question becomes whether there is any variance in the dates alleged and whether the evidence misled defendant in the preparation of his defense.

¶ 32 Defendant's argument is analogous to that of the defendant in *People v. Cregar*, 172 Ill. App. 3d 807, 822-23, 526 N.E.2d 1376, 1386-87 (1988). In *Cregar*, 172 Ill. App. 3d at 823, the defendant contended the lack of an instruction on other crimes was exacerbated by an Illinois Pattern Jury Instructions, Criminal, No. 3.01 (2d ed. 1981) instruction stating the State need not prove the offense occurred on the exact date charged. This court stated, in *Cregar*, it was not error because the date alleged in the indictment was immaterial as long as the State proved the offense occurred at any time within the statute of limitations. *Cregar*, 172 Ill. App. 3d at 823.

¶ 33 In this case, as in *Cregar*, defendant argued the error of submitting the instruction as to variance of dates was exacerbated by not instructing the jury about other-crimes evidence brought out by the testimony regarding molestation of M.S. from the age of three or four. We find that argument unconvincing, as we did in *Cregar*. See *People v. Barlow*, 188 Ill. App. 3d

393, 402-03, 544 N.E.2d 947, 953 (1989) ("[B]ecause the date of the offense is not an essential element in child sex offenses [citation], any change in the dates does not alter the nature of the crime charged."). The testimony clearly centered around the incident during November or December 2014. Both defendant and M.S. spoke about that particular time period. The other-crimes evidence was more vague, not specific, and clearly admissible. Even defendant acknowledged the admissibility of propensity evidence pursuant to section 11-7.3(a)(1), (b) of the Code of Criminal Procedure of 1963. 725 ILCS 5/115-7.3(a)(1), (b) (West 2014). Moreover, defendant's defense was also not time-specific and was a complete denial. Defendant was then directed to the specific time frame of November 2014 and again unequivocally denied "anything of a sexual nature." For good measure, his attention was then directed to M.S.'s testimony the day before, and he again denied "the things she said took place between the two of [them]."

¶ 34        Exactly when in November through December 2014 was not clear. M.S. said the last occurrence was at her grandmother's house "close to the end of winter," between Thanksgiving and Christmas. Otherwise the testimony about other incidents of sexual abuse was very general in nature. Defendant said he moved out of the home with M.S. and her mother in November 2014 and moved in with his mother, M.S.'s grandmother. He said she came to visit on only two occasions where she stayed overnight, again without being specific.

¶ 35        According to defendant, regardless of the date, he did not do it. Under the circumstances, in light of the broad range of dates charged between November 2014 and December 2014, the court giving IPI Criminal 4th No. 3.01 was appropriate and caused no prejudice to defendant.

¶ 36                    C. IPI Criminal 4th No. 11.66

¶ 37        Defendant argues the trial court erred by failing to give IPI Criminal 4th No. 11.66 to the jury. The State concedes error, and we accept its concession.

¶ 38        IPI Criminal 4th No. 11.66 instructs a jury to determine the weight to be given to hearsay statements at trial, considering the "age and maturity" of the victim, "the nature of the statement[s], [and] the circumstances under which *** statement[s]" were made.

> "In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13 ***, the following evidence shall be admitted as an exception to the hearsay rule:
>
> ***
>
> (2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.
>
> (b) Such testimony shall only be admitted if:
>
> (1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and
>
> (2) The child or moderately, severely, or profoundly intellectually disabled person either:
>
> (A) testifies at the proceeding; ***
>
> * * *

(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, or the intellectual capabilities of the moderately, severely, or profoundly intellectually disabled person, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." 725 ILCS 5/115-10(a)(2), (b)(1), (b)(2)(A), (c) (West 2014).

¶ 39 Here, the statements by Bunyard and Schuler were hearsay statements made by M.S., who was 11 years old at the time of the statements, and M.S. testified at trial. Under a clear reading of section 115-10 of the Code of Criminal Procedure of 1963, trial court was required to give IPI Criminal 4th No. 11.66. 725 ILCS 5/115-10(c) (West 2014). Since the court did not, we find it committed error. See *People v. Mitchell*, 155 Ill. 2d 344, 354, 614 N.E.2d 1213, 1217 (1993). This error was also not preserved by defendant through objection or posttrial motion and is subject to plain-error review.

¶ 40                                    D. Bolstering Credibility

¶ 41 Defendant argues the State repeatedly engaged in conduct that improperly bolstered M.S.'s credibility. We agree.

¶ 42 "Because questions of credibility are to be resolved by the trier of fact [citation] 'it is generally improper to ask one witness to comment directly on the credibility of another witness.' " *People v. Boling*, 2014 IL App (4th) 120634, ¶ 121, 8 N.E.3d 65 (quoting *People v. Becker*, 239 Ill. 2d 215, 236, 940 N.E.2d 1131, 1143 (2010)). "[O]ne witness should not be

allowed to express his [or her] opinion as to another witness's credibility." *People v. Henderson*, 394 Ill. App. 3d 747, 754, 915 N.E.2d 473, 478 (2009).

¶ 43                          1. *Schuler's Testimony*

¶ 44        Defendant argues the State improperly bolstered M.S.'s credibility by eliciting statements from Schuler about M.S.'s veracity. We agree.

¶ 45        During the State's direct examination of Schuler, the following exchange occurred:

> "Q. Now, as far as—I am asking veracity, telling the truth, did you
>
> ever have a problem with [M.S.] lying to you about things?
>
> A. No, no, I did not."

The State argues the aforementioned exchange was not a way to bolster credibility but instead laid the foundation for M.S.'s character for truthfulness; both are impermissible.

¶ 46        In *People v. Brothers*, 2015 IL App (4th) 130644, 39 N.E.3d 1101, this court analyzed whether the State committed error when the officer stated the victim was very credible in a sexual assault case. When the State asked about the demeanor of the victim, the officer stated, "She was still in shock" "but very believable, very credible." (Internal quotation marks omitted.) *Brothers*, 2015 IL App (4th) 130644, ¶ 18. This court said that was improper even though the officer volunteered the information without prompting. *Brothers*, 2015 IL App (4th) 130644, ¶ 126.

¶ 47        A witness is only permitted to express an opinion about another witness's character for truthfulness after their character for truthfulness has been attacked by reputation or opinion evidence. See Ill. R. Evid. 608 (eff. Jan. 6, 2015). Such was not the case here. The State elicited the aforementioned testimony in its direct examination of its second witness, Schuler.

Before that, the only inquiry by defendant's attorney centered on a specific incident, not reputation or character. In response to a question about whether she told her mother about the ongoing abuse, the victim said, "[My mom] won't listen to me." Defense counsel merely entered the door the prosecutor opened by asking one question about whether her mother believed her. There was no reason for the testimony to come in other than to bolster M.S.'s credibility in an improper way. See *Brothers*, 2015 IL App (4th) 130644, ¶ 126. As such, we find this was in error and subject to plain-error review.

¶ 48                    2. *Questioning of Defendant and Defendant's Statements*

¶ 49            Defendant argues the State improperly elicited testimony from him and Sergeant Johnson about why M.S. would lie. The State concedes error on this issue, and we accept the State's concession.

¶ 50            "It is well established that it is improper for a prosecutor to ask a defendant his opinion on the veracity of other witnesses, as such questions intrude on the jury's function to determine witness credibility and also demean and ridicule the defendant." *People v. Schaffer*, 2014 IL App (1st) 113493, ¶ 49, 4 N.E.3d 176.

¶ 51            In *Schaffer*, 2014 IL App (1st) 113493, the appellate court analyzed the State's questions to the defendant on cross-examination in an aggravated criminal sexual assault and home invasion case. The defendant was asked by the prosecutor multiple times if the victim made up certain details, such as the defendant charging into her bedroom, threatening to kill her, and taking her wedding band. *Schaffer*, 2014 IL App (1st) 113493, ¶ 50. The court deemed this was improper, as the questions were "designed to demean and ridicule [the] defendant." *Schaffer*, 2014 IL App (1st) 113493, ¶ 51. The court in that case found plain error where the evidence was

closely balanced and hinged on a credibility determination, stating "the prosecution's improper cross-examination denied [the] defendant a fair trial." *Schaffer*, 2014 IL App (1st) 113493, ¶ 58.

¶ 52    Here, the prosecutor cross-examined defendant about the credibility of M.S. as follows:

"Q. And you have no idea why she would make something like this up?

A. No, I do not.

Q. Did you have a good relationship with her?

A. Yes, I did.

Q. So out of the blue your 11[-], now 12-year-old daughter shows up and is making these horrible accusations about you and you have no idea why?

A. Yes."

¶ 53    The State clearly asked defendant to comment on the veracity of another witness, M.S., which is improper. See *Schaffer*, 2014 IL App (1st) 113493, ¶ 49. This error was exacerbated in closing arguments, when the prosecutor said, "But he can't come up with any particular reason why she would lie." While at times this error could be harmless, "reversal is warranted when the evidence is closely balanced and the credibility of the witnesses is a crucial factor underlying the jury's determination of guilt or innocence." *Schaffer*, 2014 IL App (1st) 113493, ¶ 49. As this error is unpreserved, we will review under a plain-error analysis to evaluate if the evidence is closely balanced.

¶ 54                    E. Closing Argument

¶ 55    Defendant argues the State committed reversible error with certain comments made during closing argument. We agree.

¶ 56    Prosecutors have "wide latitude in making a closing argument and [are] permitted to comment on the evidence and any fair, reasonable inferences it yields." *People v. Glasper*, 234 Ill. 2d 173, 204, 917 N.E.2d 401, 419 (2009). "It is, however, improper for the prosecutor to argue assumptions or facts not based upon the evidence in the record." *People v. Kliner*, 185 Ill. 2d 81, 151, 705 N.E.2d 850, 885 (1998). "A closing argument must be viewed in its entirety, and the challenged remarks must be viewed in their context. [Citation.] Statements will not be held improper if they were provoked or invited by the defense counsel's argument." *Glasper*, 234 Ill. 2d at 204. However, "[i]mproper remarks warrant reversal only where they result in substantial prejudice to the defendant, considering the content and context of the language, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial." *Kliner*, 185 Ill. 2d at 151-52.

¶ 57                    1. *Comment on Facts Outside of the Evidence*

¶ 58    Defendant argues the State committed error when it said the cunning nature of sexual predators is something "we" see on a daily basis. We agree.

¶ 59    In this case, the State on rebuttal stated as follows:

"[Defense counsel] argues that [defendant] must have been so cunning and so slick, he can do it over and over again and no one has a clue. Absolutely. We see that everyday in the news. We see that everyday, predators who pick out the perfect victim, the victim they know who is not going to tell on them, the victim they can do these things over and over again and no one is going to believe

them or they are not going to tell anybody. That's not unheard of,

ladies and gentlemen. We see it on a daily basis."

¶ 60    In *People v. Lowry*, 354 Ill. App. 3d 760, 771, 821 N.E.2d 649, 661 (2004), the appellate court stated it was improper in closing arguments to refer to "studies" to explain the discrepancies in witnesses' testimonies where there was no evidence of the "studies" referenced. In *People v. Adams*, 2012 IL 111168, ¶ 16, 962 N.E.2d 410, the State argued in closing that the officer who testified had to be believed because if the officer lied, he would be risking his job and his freedom. Our supreme court said this statement was "impermissible speculation, as no evidence was introduced at trial" to back those claims by the State. *Adams*, 2012 IL 111168, ¶ 20.

¶ 61    Here, the statement about how cunning or calculating sexual offenders that the State sees on a daily basis are was not presented as evidence in the trial. The State argues the statement is a permissible comment based on the jury's common knowledge. However, these comments went beyond talking about daily experiences of jurors and their knowledge of sexual abuse but went to matters outside of the trial. Had the State presented expert testimony to assist in exploring M.S.'s behavior under section 115-7.2 of the Code of Criminal Procedure of 1963, the comments might have been admissible. See 725 ILCS 5/115-7.2 (West 2014). Here, however, the State was inferring knowledge of the habits of sexual predators as a matter of common knowledge. Therefore, the State injected error with its comments and, as there was no objection at trial or in a posttrial motion, we review this error under a plain-error analysis.

¶ 62                    2. *Comment About Message to Victims*

¶ 63    Defendant argues the State committed error by asking the jury what kind of message it would send to victims if defendant was acquitted. We agree.

¶ 64    "[A] defendant's guilt may be proved only by 'legal and competent' facts, 'uninfluenced by bias or prejudice raised by irrelevant evidence.' " *People v. Blue*, 189 Ill. 2d 99, 129, 724 N.E.2d 920, 936 (2000) (quoting *People v. Bernette*, 30 Ill. 2d 359, 371, 197 N.E.2d 436, 443 (1964)). "It is a basic principle of our criminal justice system that the prosecutor owes the defendant a duty of fairness." *People v. Dunsworth*, 233 Ill. App. 3d 258, 269, 599 N.E.2d 29, 36 (1992). "Because this duty extends throughout the trial and includes closing arguments, the prosecutor has an ethical obligation to refrain from presenting improper and prejudicial argument." *People v. Liner*, 356 Ill. App. 3d 284, 292, 826 N.E.2d 1274, 1282 (2005). "The broader problems of crime in society should not be the focus of a jury considering the guilt or innocence of an individual defendant, lest the remediation of society's problems distract jurors from the awesome responsibility with which they are charged." *People v. Johnson*, 208 Ill. 2d 53, 77-78, 803 N.E.2d 405, 419 (2003).

¶ 65    Here, the prosecutor in closing arguments stated as follows:

"All we have are [M.S.'s] words. That has to be enough, ladies and gentlemen. Think of the message that you send to victims. Think of the message that we would be sending to victims by our Criminal Justice System, "Hey, don't you come forward. Don't say anything, don't even complain about these unless you got some corroborating evidence, unless you got DNA [(deoxyribonucleic acid)] or confession from the person, don't even come forward because you will not get over that burden.

That's not true, ladies and gentlemen. Her words are absolutely and can be absolutely enough."

¶ 66        In *Liner*, 356 Ill. App. 3d at 291, the appellate court reviewed whether the prosecutor's closing statement was improper. In closing arguments, the prosecutor said, "[Y]ou're not just protecting [the victim]. You're protecting every child and every citizen in every home in this county." (Internal quotation marks omitted.) *Liner*, 356 Ill. App. 3d at 291. The court held the comments were improper since they were made to inflame the passions of the jury about a member of a class of "which we, as a society, are sympathetic." *Liner*, 356 Ill. App. 3d at 297.

¶ 67        In *People v. Fletcher*, 156 Ill. App. 3d 405, 410, 509 N.E.2d 625, 629-30 (1987), the appellate court looked at the propriety of the State's closing argument. There, the State said, "If you want to find him not guilty because that was a, just a seven year old testifying, you can do so. But in doing so, you are saying that a seven year old's testimony can never convict a defendant." (Internal quotation marks omitted.) *Fletcher*, 156 Ill. App. 3d at 410. The First District said the aforementioned comment was erroneous and "went to matters not in evidence." *Fletcher*, 156 Ill. App. 3d at 411.

¶ 68        In this case, the statements about the message it would send to child victims of sexual abuse was intended to inflame the emotions of the jury for a sympathetic class—children. As in *Fletcher*, the statement was not about the testimony at trial but instead went to a broader issue not in evidence. As such, it was improper for the State to ask the jurors to send a communal message by their verdict. This error was not preserved, and we will review this as a matter of plain error as well.

¶ 69                                F. Plain Error

¶ 70 Defendant argues the aforementioned unpreserved errors should be reviewed under a plain-error analysis and this court should vacate the verdict and remand for a new trial. We agree.

¶ 71 "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

> "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479-80 (2005).

In the second instance, "[p]rejudice to the defendant is presumed because of the importance of the right involved, '*regardless* of the strength of the evidence.' " (Emphasis in original.) *Herron*, 215 Ill. 2d at 187 (quoting *Blue*, 189 Ill. 2d at 138). Under the first prong of plain-error analysis,

"[w]hat makes an error prejudicial is the fact that it occurred in a close case where its impact on the result was potentially dispositive." *Sebby*, 2017 IL 119445, ¶ 68. Thus, whether the error is "trivial or *de minimis*" is "simply the wrong inquiry. *Sebby*, 2017 IL 119445, ¶ 69. "The only question in a first-prong case, once clear error has been established, is whether the evidence is closely balanced." *Sebby*, 2017 IL 119445, ¶ 69. "In both instances, the burden of persuasion remains with the defendant." *Herron*, 215 Ill. 2d at 187. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. "A reviewing court's inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Sebby*, 2017 IL 119445, ¶ 53. "The issue before us, however, does not involve the sufficiency of close evidence but rather the closeness of sufficient evidence." *Sebby*, 2017 IL 119445, ¶ 60.

¶ 72    Here, defendant argues plain error under the closely balanced prong. In *Sebby*, our supreme court determined whether the evidence was closely balanced due to conflicting credible accounts of the alleged crime of resisting a peace officer. *Sebby*, 2017 IL 119445, ¶ 60. There the court mentioned the two different accounts were plausible, "and neither version [was] supported by corroborating evidence." *Sebby*, 2017 IL 119445, ¶ 62. As such, the court believed the evidence was closely balanced as in *People v. Naylor*, 229 Ill. 2d 584, 606-607, 893 N.E.2d 653, 667-68 (2008).

¶ 73    In *Naylor*, 229 Ill. 2d at 606-07, our supreme court analyzed whether the case was closely balanced because of a "contest of credibility." In that case, the court stated the defendant's testimony was "credible in that it [was] consistent with much of the officers'

testimony and the circumstances of his arrest." *Naylor*, 229 Ill. 2d at 607. Given the opposing versions of the same event and no extrinsic evidence to corroborate either version, the case "necessarily involved the court's assessment of the credibility of the two officers against that of [the] defendant." *Naylor*, 229 Ill. 2d at 607.

¶ 74 Here, this case boiled down to a clear question of credibility between M.S. and defendant. Although other witnesses testified, three of them restated what they were told by M.S or defendant. Sergeant Johnson mentioned the similarities in the description of events, which makes defendant's account more plausible as was argued in *Naylor*, 229 Ill. 2d at 607. The State argues defendant made an inculpatory statement to police, referring to one exchange during the direct examination of Sergeant Johnson:

> "Q: And as far as [M.S.'s] room, in particular, did he ever say he
>
> went into her room? Was there ever anything in the conversation
>
> with the Defendant about that?
>
> A: Yes, she had talked about an incident once where she was
>
> jumping on the bed, and he had come up there and yelled at her,
>
> and had done somethings [*sic*], and he claimed that he never would
>
> ever go into her room, wouldn't come up to her bedroom."

At best, this qualifies as a potentially inconsistent statement by defendant since he testified at trial that he had, on occasion, gone upstairs to her bedroom when they lived together to calm her down. If the State had presented evidence of a medical examination of M.S. revealing evidence of sexual activity, regardless of how recent, or expert testimony regarding the frequently observed effects on child sexual abuse victims in school or around other people, this may not have been solely a question of credibility. In cases where the evidence is a contest of credibility

and there is no extrinsic evidence, the evidence is closely balanced. See *Sebby*, 2017 IL 119445, ¶ 63; see also *Naylor*, 229 Ill. 2d at 607. It is the jury's job to make credibility determinations, and the various errors here interfered with its ability to do that.

¶ 75 The failure to properly admonish the jury as to the four basic *Zehr* principles in criminal prosecutions is plain error. Our supreme court has been clear that especially in close cases, a failure to follow Rule 431(b) can create reversible error by itself. The improper bolstering of M.S.'s testimony tipped the scale, especially in light of the failure to provide a complete instruction on how to even evaluate a child victim's testimony. Demeaning or ridiculing defendant also undermined his credibility, which was very important as the jury was asked to determine which witness it found more credible. The closing argument statements threatened the fairness of the trial and allowed a jury to convict not on the evidence but instead based on emotion or information not properly presented. The cumulative effect of these errors in conjunction with the closely balanced nature of the case requires a new trial. See *Sebby*, 2017 IL 119445, ¶ 68-69 (finding a defendant must only show error and a closely balanced case to be entitled to a new trial).

¶ 76 While we must reverse defendant's conviction, we find the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. The jury was perfectly justified in believing the testimony of M.S., and the credible testimony of a victim without more can be sufficient to justify a conviction. See *People v. Summers*, 353 Ill. App. 3d 367, 372, 818 N.E.2d 907, 977 (2004); see also *People v. Johnson*, 2016 IL App (4th) 150004, ¶ 32, 55 N.E.3d 32 (finding the jury could give more weight to the victim's testimony over the defendant's and find the defendant guilty off the victim's testimony alone). Thus, we find there is no double jeopardy impediment to a new trial. See *Hale*, 2012 IL App (4th) 100949, ¶ 26. However, we reach no

conclusion regarding defendant's guilt that would be binding on retrial. See *Naylor*, 229 Ill. 2d at 611.

¶ 77                             G. Ineffective Assistance of Counsel

¶ 78        Defendant argues, alternatively, the unpreserved errors should be reviewed for ineffective assistance of counsel if we found there was not plain error. Based upon our finding of plain error, analysis of this issue is unnecessary.

¶ 79                             III. CONCLUSION

¶ 80        For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

¶ 81        Reversed and remanded.