NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170732-U

NO. 4-17-0732

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 16, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ENDYR QUINONES, | ) | No. 16CF42 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert M. Travers, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding (1) the evidence presented at trial was sufficient to prove defendant guilty beyond a reasonable doubt and (2) although the trial court erred by failing to comply with Supreme Court Rule 431(b) (eff. July 1, 2012), the error did not rise to the level of plain error, as the evidence was not closely balanced.

¶ 2    In February 2016, the State charged defendant, Endyr Quinones, by information with one count of aggravated resisting a correctional officer (720 ILCS 5/31-1(a), (a-7) (West 2014)).  In May 2017, a jury found defendant guilty and in September 2017, the trial court sentenced defendant to four years' imprisonment.

¶ 3    Defendant appeals, arguing (1) the State failed to prove him guilty beyond a reasonable doubt and (2) the trial court erred by failing to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) during *voir dire*.  We affirm.

¶ 4                                  I. BACKGROUND

¶ 5                               A. Defendant's Charge

¶ 6        In February 2016, the State charged defendant by information with one count of aggravated resisting a correctional officer (720 ILCS 5/31-1(a), (a-7) (West 2014)), in that defendant knowingly resisted the performance of correctional officer William Zimmerman of an authorized act within his official capacity and defendant's actions were the proximate cause of a foot injury sustained by Zimmerman.

¶ 7                                  B. *Voir Dire*

¶ 8        In May 2017, the trial court commenced *voir dire* of the prospective jurors. The court, without objection from defendant, informed the first group of potential jurors as follows:

> "I'm going to start by asking all of you as a group about
> four principles of law and whether you accept those principles.
> I'm going to recite the principles, and then I'm going to ask each
> one of you individually if you agree to accept those principles.
>
> So, the first principle is that the defendant is presumed
> innocent of the charge against him. The second principal [*sic*] is,
> that before the defendant can be convicted, the State must prove
> the defendant guilty beyond a reasonable doubt. The third
> principal [*sic*] is that the defendant is not required to offer any
> evidence on his own behalf. And the fourth and last principal [*sic*]
> is that the defendant is not, excuse me, if the defendant does not
> testify, it cannot be held against him."

Following these admonitions to the entire venire, the trial court asked each potential juror, "[D]o you accept those four principles?" Each panelist answered affirmatively.

¶ 9 For the second panel of potential jurors and without objection from defendant, the trial court gave the following instruction:

"So, let me ask you, do you understand and accept the following principles: First, that the defendant is presumed innocent of the charge against him; second, that before the defendant can be convicted, the State must prove the defendant guilty beyond a reasonable doubt; third, that the defendant is not required to offer any evidence on his own behalf; and, fourth, that if the defendant does not testify, it cannot be held against him."

The court again asked each potential juror, "[D]o you agree with those principles?" Each panelist answered affirmatively.

¶ 10 C. Trial

¶ 11 1. *Video Footage*

¶ 12 During defendant's jury trial, the State offered video footage of the alleged crime and, without objection from defendant, the trial court admitted the video into evidence. The parties played the video for the jury throughout the trial. At the outset, the footage showed defendant aggressively pulling away from an officer. Defendant is then grabbed by the collar, pushed back against a cell, and promptly taken to the ground by several officers. Defendant is then brought to his feet and walked backwards down a narrow cellblock by two officers, with one additional officer following. The video footage next shows one of the officers escorting defendant being pushed and dragged against the cell frames while defendant stiffens and pushes

- 3 -

back toward the trailing officer. Officers lead defendant down several flights of stairs and toward a holding cell. As officers attempt to place defendant inside the cell, defendant pulls away and struggles with the officers. After defendant is secured, one of the officers escorting defendant is seen walking away from the holding area favoring one leg.

¶ 13                                2. *Glendal French*

¶ 14        The State's first witness, Glendal French, testified he was employed as a major with the Illinois Department of Corrections (IDOC). On April 23, 2013, accompanied by several other uniformed correctional officers, French supervised "multiple inmates going out to yard" in the "North Cell House" at the Pontiac Correctional Center. During that time, French saw defendant "standing in the middle of the gallery waiting to be strip-searched to go to yard." French explained that due to the narrow width of the gallery, if an inmate is standing in the middle, "staff can't pass up and down the gallery without coming either in contact with the inmate or real close contact." French testified he instructed defendant to stand on the outside of the gallery like the other inmates were doing. Defendant initially complied, but as French walked by, defendant asked if French's brother worked at Big Muddy Correctional Facility and "said something to the effect of, am I going to have to treat you like I treated him." As French passed, defendant stepped back out into the gallery and was told again to step back or he would be secured in his cell. Defendant refused to comply.

¶ 15        According to French, after telling defendant to stand on the outside of the gallery, defendant began "to pull on the officer that was holding the D ring." French described how inmates are cuffed behind their backs and a "D" shaped ring is attached to the handcuffs, like a handle to assist the officer with maintaining control of the inmate during transport. He further explained the purpose of these rings is so staff can control an inmate who becomes combative

and stated they were used every time an inmate is escorted anywhere. As defendant became "more agitated," French put his hands out to stop defendant, believing defendant was attempting to headbutt him or get close to him. French then placed defendant against a cell door in an effort to secure him, whereupon other officers became involved. French stated defendant was combative and attempting to be aggressive as he was taken to the ground. Defendant resisted the officers as they put leg irons on him. After placing defendant in leg restraints, officers lifted defendant off the ground and escorted him to a holding cell. According to French, in a normal situation, one guard can escort a cooperative inmate. Defendant required three officers to remove him from the gallery. After the incident with defendant, French testified one officer, William Zimmerman, came to him indicating something happened to his foot. French instructed Zimmerman to go to the healthcare unit.

¶ 16     On cross-examination, French was questioned about his testimony in relation to a handwritten statement, or "434", he wrote shortly after the incident and the fact it did not contain a reference to comments made by defendant. On redirect, he was asked to review his statement given to an internal affairs investigator wherein the conversation was referenced. Although he acknowledged he did not include defendant's comment to him in the informal statement, French reiterated the 434 contained accurate and detailed information regarding the incident and told the investigator the substance of the comment when questioned about it.

¶ 17                    3. *William Zimmerman*

¶ 18     Lieutenant William Zimmerman testified he was employed as a correctional officer with IDOC and had been employed in that capacity since 2003. Zimmerman stated that on April 23, 2013, he was conducting cell searches in "7 Gallery" as inmates waited to be moved to the yard. Zimmerman observed defendant aggressively step toward French and away from the

handrail he was supposed to be up against. Zimmerman said defendant had turned his body, positioning himself toward Lieutenant French and defendant was speaking aggressively. French was telling defendant to step back against the rail so staff could pass. According to Zimmerman, defendant took up much of the gallery and disobeyed French's verbal commands to step back. Zimmerman and other officers responded by placing defendant on the ground and applying leg restraints.

¶ 19　　　　Zimmerman also acknowledged escorting a cooperative inmate normally required only one officer; however, leading defendant off the gallery in this instance required three. While escorting defendant, he would not respond to verbal commands, continued being aggressive, and yelled threats toward Lieutenant French. When asked how defendant was being aggressive as the officers escorted him, Zimmerman said defendant was "just very off balance. I mean, he obviously did not want to go where we were instructing him to go; so, we were forcefully leading him down the gallery." Zimmerman testified as they were doing so, he was thrown into a cell front and fell to his knee. After placing defendant in a holding cell, Zimmerman felt pain in his right foot, reported it to French, and went to the healthcare unit. An X-ray of Zimmerman's foot showed a fracture. Prior to the incident with defendant, Zimmerman had no problems with his foot and no prior injury.

¶ 20　　　　While the video footage played, Zimmerman identified himself as the uniformed officer closest to the cellblocks being pushed into the cells while escorting defendant down the narrow gallery. Zimmerman testified he fell to his knee somewhere in the area of the security camera's blind spot and indicated defendant continued to struggle while being escorted downstairs to a holding cell. Zimmerman identified himself as the officer leaving the holding area with a "limp."

¶ 21                                  4. *Defendant*

¶ 22          Defendant testified on his own behalf, stating, while waiting to go to yard on April 23, 2013, French told him to stand by the rail line. After French passed by, defendant stated he returned to his original spot on the gallery and French grabbed him. Defendant stated he "turned around" and told French "don't grab me like that." When footage of the event was played again for the jury, defendant reiterated French pushed him toward a cell door, he was brought to the ground, and he was placed in leg restraints. Defendant denied resisting as officers escorted him off the gallery, stating the officers had "[his] arms twisted backwards" and he was "not able to keep [his] balance."

¶ 23          On cross-examination, defendant admitted being previously convicted of armed robbery in 2011 and aggravated battery in 2013. Defendant further admitted being familiar with the procedures correctional officers follow when moving inmates to yard time from their cells.

¶ 24          The jury found defendant guilty and the trial court sentenced him to four years' imprisonment, noting defendant's prior criminal history as being "surprisingly, surprisingly bad."

¶ 25          This appeal followed.

¶ 26                                  II. ANALYSIS

¶ 27                          A. Sufficiency of the Evidence

¶ 28          On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt. We disagree.

¶ 29          " 'When reviewing a challenge to the sufficiency of the evidence in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

- 7 -

beyond a reasonable doubt.' " *People v. Ngo*, 388 Ill. App. 3d 1048, 1052, 904 N.E.2d 98, 102 (2008) (quoting *People v. Singleton*, 367 Ill. App. 3d 182, 187, 854 N.E.2d 326, 331 (2006)). The trier of fact has the responsibility to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81, 903 N.E.2d 388, 406 (2009). When considering the sufficiency of the State's evidence, the reviewing court does not retry the defendant. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 322 (2011). Instead, "[a] conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67, 23 N.E.3d 325.

¶ 30         To sustain defendant's conviction for aggravated resisting a correctional officer, the State must prove (1) defendant knowingly resisted or obstructed an authorized act (2) by someone known to be a correctional officer, and (3) defendant's actions were the proximate cause of the officer's injury. See 720 ILCS 5/31-1(a), (a-7) (West 2014). Proximate cause includes both cause in fact and legal cause. *People v. Johnson*, 392 Ill. App. 3d 127, 131, 924 N.E.2d 1019, 1022 (2009). Cause in fact is established where a reasonable certainty is shown that a defendant's acts caused the injury, and legal cause is established where an injury was foreseeable as to the type of harm that a reasonable person would expect to see as a likely result of his conduct. *Johnson*, 392 Ill. App. 3d at 131. Defendant first argues the record lacks evidence of any specific act of resistance.

¶ 31         Our supreme court expounded upon the meanings of the terms "resistance" and "obstructs," as used in section 31-1(a), as follows:

"[T]he statutory terms convey commonly recognized meanings. 'Resisting' or 'resistance' means 'withstanding the force or effect of' or the 'exertion of oneself to counteract or defeat'. 'Obstruct' means 'to be or come in the way of'. These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms *** proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." (Internal quotation marks omitted.) *People v. Raby*, 40 Ill. 2d 392, 398-99, 240 N.E.2d 595, 599 (1968).

In *People v. Crawford*, 152 Ill. App. 3d 992, 994, 505 N.E.2d 394, 395 (1987), this court found attempts to pull away, struggle, and cause officers to use physical force were sufficient to uphold a conviction for resisting a peace officer.

¶ 32        Here, both officers French and Zimmerman testified to multiple acts of resistance by defendant. French testified defendant aggressively pulled away from the officer holding his D ring, had to be forcefully taken to the ground, and attempted to resist officers placing leg restraints on him. Zimmerman testified he, and other officers, had to forcefully escort defendant out as "he obviously did not want to go where we were instructing him to go." Defendant struggled with the officers as they took him downstairs to a holding cell. Further, video evidence showed defendant pulling away from the officer holding him, being forcefully taken to the ground, and subsequently being escorted to a holding cell by other uniformed officers. Upon

entering the holding area, the footage clearly shows defendant pulling away in the opposite direction from the officers attempting to put him in the cell. While defendant's testimony contradicted much of the officers' testimony, "it is the function of the trier of fact to weigh the credibility of witnesses and to resolve conflicts or inconsistencies in their testimony." *People v. Digirolamo*, 179 Ill. 2d 24, 46, 688 N.E.2d 116, 126 (1997). After viewing the evidence in the light most favorable to the prosecution, we conclude the evidence was sufficient to allow a rational trier of fact to find defendant guilty beyond a reasonable doubt.

¶ 33    Likewise, we disagree with defendant's second contention that the State failed to show defendant's actions were the proximate cause of Zimmerman's injury. Based on the evidence and testimony presented at trial, we conclude a reasonable jury could find defendant's acts of resistance were the proximate cause of Zimmerman's injury.

¶ 34    The jury was in the best position to determine the credibility of the witnesses and draw reasonable inferences from the evidence. French testified to defendant's combativeness and was present while officers placed defendant in leg restraints and escorted him off the narrow gallery. Following the incident, Zimmerman came to French complaining of pain in his foot. Zimmerman testified he had no problems with his foot and no injuries prior to struggling with defendant. Although Zimmerman could not pinpoint exactly where he was injured, he testified he was thrown into a cell front and fell to his knee "[t]owards the middle, the high end of 7 Gallery" while removing defendant from the gallery. Furthermore, video footage of the event showed officers struggling to restrain defendant. The footage clearly shows Zimmerman being pushed into and dragged along the cell fronts as defendant stiffened and struggled with the officers escorting him down the corridor. Thus, we conclude the foregoing testimony and video

evidence support the jury's finding that defendant's struggling with officers was the proximate cause of Zimmerman's injuries.

¶ 35                              B. *Voir Dire* Admonishments

¶ 36       Defendant next argues his conviction must be reversed because the trial court failed to fully comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). Defendant concedes he forfeited this issue by failing to raise a contemporaneous objection at trial. See *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988) (holding that to preserve a claim for review, a defendant must both object at trial and include the error in a posttrial motion). Despite his forfeiture, defendant claims the issue may be reviewed here, as the court committed plain error in that "the evidence was so closely balanced that the error threatened to tip the scales of justice against the defendant." The State concedes the court erred by failing to properly ask prospective jurors whether they understood the principles as mandated in Rule 431(b) but contends the error did not constitute plain error and defendant was not deprived of a fair trial.

¶ 37       Rule 431(b) provides:

>           "The court shall ask each potential juror, individually, or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's

decision not to testify when the defendant objects." Ill. S. Ct. R.

431(b) (eff. July 1, 2012).

¶ 38        "The language of Rule 431(b) is clear and unambiguous" and mandates "a

specific question and response process." *People v. Thompson*, 238 Ill. 2d 598, 607, 939 N.E.2d

403, 409 (2010). The trial court "must ask each potential juror whether he or she understands

and accepts each of the principles in the rule." *Thompson*, 238 Ill. 2d at 607. Furthermore, "the

rule requires an opportunity for a response from each prospective juror on their understanding

and acceptance of those principles." *Thompson*, 238 Ill. 2d at 607. "We review *de novo* whether

the trial court followed Rule 431(b)." *People v. Stevens*, 2018 IL App (4th) 160138, ¶ 22, 115

N.E.3d 1207. Here, although the trial court properly inquired of the first panel whether they

accepted the four *Zehr* principles, the court failed to ask whether they understood them. It was

error for the trial court to omit asking the jurors in the first panel whether they understood each

of the principles.

¶ 39        "In Illinois, there are two categories of plain error: prejudicial errors—errors that

may have affected the outcome in a closely balanced case—and presumptively prejudicial

errors—errors that may not have affected the outcome, but must still be remedied." *People v.*

*Herron*, 215 Ill. 2d 167, 185, 830 N.E.2d 467, 478-79 (2005).

>        "[T]he plain-error doctrine bypasses normal forfeiture
>
>        principles and allows a reviewing court to consider unpreserved
>
>        error when either (1) the evidence is close, regardless of the
>
>        seriousness of the error, or (2) the error is serious, regardless of the
>
>        closeness of the evidence. In the first instance, the defendant must
>
>        prove 'prejudicial error.' That is, the defendant must show both

that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 186-87.

¶ 40    Defendant argues his contention is cognizable under the first prong. "Under the first prong of plain-error analysis, '[w]hat makes an error prejudicial is the fact that it occurred in a close case where its impact on the result was potentially dispositive.' " *Stevens*, 2018 IL App (4th) 160138, ¶ 71 (quoting *People v. Sebby*, 2017 IL 119445, ¶ 68, 89 N.E.3d 675). "Thus, for purposes of the first prong, the claimed error—substantial or not—has to be of *such a nature* that it might have tipped the scales against the defendant." (Emphasis in original.) *People v. Ely*, 2018 IL App (4th) 150906, ¶ 18, 99 N.E.3d 566. "Whereas prejudice is *presumed* for purposes of the second prong of plain error, it must be *proved* for purposes of the first prong." (Emphasis in original.) *Ely*, 2018 IL 150906, ¶ 18. "In both instances, the burden of persuasion remains with the defendant." *Herron*, 215 Ill. 2d at 187. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. "A reviewing court's inquiry involves an assessment of the evidence on the

elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Sebby*, 2017 IL 119445, ¶ 53.

¶ 41 Defendant relies heavily on *Sebby* in support of his contention under the closely balanced prong. In *Sebby,* our supreme court determined the evidence was closely balanced where "[t]he deputies' testimony was largely consistent, but so was the testimony of the defendant and his witnesses." *Sebby*, 2017 IL 119445, ¶ 61. The supreme court stated the outcome of the case turned on how the fact finder resolved a "contest of credibility." *Sebby*, 2017 IL 119445, ¶ 63 (quoting *People v. Naylor*, 229 Ill. 2d 584, 606-07, 893 N.E.2d 653, 667 (2008)). The supreme court concluded the evidence was closely balanced because neither party presented extrinsic evidence to corroborate or contradict either version and because both versions were credible. *Sebby*, 2017 IL 119445, ¶ 63 (quoting *Naylor*, 229 Ill. 2d at 606-07).

¶ 42 Here, the evidence presented was not closely balanced. The jury heard testimony from both French and Zimmerman describing defendant's actions on the gallery. Both officers testified to defendant's combativeness as officers tried to secure him. The jury was in the best position to assess French's credibility when he referenced both his handwritten statement and his statement to an internal investigator, corroborating his testimony about the incident and the exchange with defendant on the gallery which precipitated it. No other witnesses testified on defendant's behalf. While defendant gave a contrasting version of events, defendant testified he was familiar with procedures officers followed when moving inmates out to yard and admitted his prior criminal convictions, which the jury was permitted to consider when assessing his credibility. See *People v. Raney*, 2014 IL App (4th) 130551, ¶ 24, 8 N.E.3d 633 ("[A] defendant who testifies may be impeached by proof of a prior conviction."). Unlike *Sebby*, this case did not boil down to a credibility contest between conflicting, credible accounts of the alleged crime.

In addition to the officers' testimony, the jury watched video footage of the event to aid in their deliberations. Introduction of this footage allowed the jury to watch the event as it happened and consider the credibility of the witnesses at trial. The footage showed defendant being wrestled to the ground after pulling away from the officer holding him and struggling with officers as they attempt to secure him. Further, the footage showed defendant again pulling away from officers as they attempt to place him in a holding cell. Despite defendant's assertions otherwise, evidence of his guilt was strong and not closely balanced. "[D]efendant must meet his burden to show that the error was prejudicial—in other words, he must show that the quantum of evidence presented by the State against the defendant rendered the evidence 'closely balanced.' " *People v. Piatkowski*, 225 Ill. 2d 551, 566, 870 N.E.2d 403, 411 (2007) (quoting *Herron*, 215 Ill. 2d at 193). Thus, defendant cannot establish the evidence, as he alleges, was so closely balanced that the error threatened to tip the scales of justice against him.

¶ 43                                III. CONCLUSION

¶ 44          For the reasons stated, we affirm the trial court's judgment.

¶ 45          Affirmed.